56 So.2d 683

## BELL v. STATE.

### 5 Div. 355.

Court of Appeals of Alabama.
Jan. 29, 1952.

D. T. Ware, Roanoke, for appellant.

Si Garrett, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

CARR, Presiding Judge.

In the circuit court the accused was convicted on a charge of grand larceny.

Mr. D. C. Irvin operated a small rural store. The building was about thirteen feet in width and many more feet in length. It had a door and two windows on the front and a side door near the rear.

Mr. Irvin used a drawer beneath a counter in the store in which to keep his money. According to Mr. Irvin's testimony on the day in question he had about $260 in bills of various denominations and a sack containing silver money in the drawer.

In respect to the time he last saw or examined the paper money he testified:

"Q. How long had it been since you had counted that money? A. I check up every day or two.

"Q. A day or two before that you had checked up? A. The day before.

"Q. On the day before this 20th of September at 3:00 o'clock in the afternoon, you had checked your money? A. Yes, sir.

"Q. Then the next time you checked that money or looked at that money was on the afternoon that you say the truck was there and after the truck had been gone thirty or forty minutes? A. Twenty to thirty minutes.

"Q. Before you missed it? A. Yes, sir, it was around thirty or forty minutes."

"Q. When was the last time you had occasion to observe that money in that draw that was under the sack—the paper money? A. It was around 1:00 o'clock."

Mr. Irvin was not at the store in the forenoon of the day of instant concern. He came at noon, and after dinner he, his wife, and a neighbor sat in the shade at the side of the store building. From this vantage they could see the front of the store, but not the side door which was on the opposite side of the building.

Mr. Irvin testified that this side door was locked. Mrs. Irvin stated that she frequently went in and out of this door in going to and from the store to her home. The dwelling was near the store building. The witness testified that on this particular day the side door was closed.

At about 3:30 P.M. and while the three indicated persons were still sitting in the shade, the accused and a Mr. Brown arrived at the store in a grocery truck. The former was employed to assist in delivering the groceries. The vehicle parked at the front of the store building and in close proximity thereto. Mr. Irvin purchased some onions. The appellant went inside the building to get a box in which to put the produce. It appears that he had to pass within three or four feet of the cash drawer as he proceeded further back to get the container. He returned promptly with the box. Mr. Irvin then went to the cash drawer and got money out of the sack with which he paid for the purchase. At this time he did not

observe that the paper money was missing from the drawer. It was not until about thirty or forty minutes later that he discovered the loss.

The record evidence is silent as to when the defendant was arrested. In fact, there is no testimony relating to the accused subsequent to the time he left the store on the truck.

Unquestionably the conviction of the accused depended upon circumstantial evidence. This being true, his conviction should not be allowed to stand unless the evidence adduced at the trial excluded to a moral certainty every reasonable hypothesis but that of his guilt. No matter how strong these circumstances may appear, they do not come up to the full measure of proof which the law demands if they can be reasonably reconciled with the theory that the defendant did not commit the charged crime.

We have read the evidence in the instant case en banc and it is our considered conclusion that the circumstances present only a suspicion that the accused took the money from the cash drawer. We cannot resort to speculation and conjecture in determining the guilt of the defendant. "When the law is respected, when the Constitution is maintained, though crime may sometimes go unpunished, at least innocence is secure."

It rarely occurs that two cases present identical facts. The following authorities bear some factual analogy to the case at bar and support our view. Tunstill v. State, 33 Ala.App. 460, 34 So.2d 857; Pitts v. State, 33 Ala.App. 363, 33 So.2d 751; Wade v. State, 17 Ala.App. 371, 84 So. 858; McMickens v. State, 16 Ala.App. 78, 75 So. 626; Mitchell v. State, 18 Ala.App. 622, 93 So. 228.

The assistant attorney general relies solely on the holding in the case of Spurlock v. State, 17 Ala.App. 109, 82 So. 557, as an authority to sustain the judgment below. We have read the original record in this case and find that some salient facts are not delineated in the opinion. There appears in Mr. King's testimony this statement: "Next morning I went to the city jail and had a conversation with the defendant about the missing money. He said that if he got it he wasn't responsible, that he didn't know anything about it, but was willing to fix it all right with me. He said that if anything was wrong he would fix it up."

There is other evidence also which had a tendency to connect the defendant with the theft of the money in the Spurlock case, supra. We do not think that the facts in the case and the circumstances incident thereto would authorize us to accept it as an influencing authority in the matter of instant concern.

The appellant was due the general affirmative charge.

The judgment below is ordered reversed and the cause remanded.

Reversed and remanded.