108 So.2d 430

James Oliver IVEY

v.

STATE.

8 Div. 132.

Court of Appeals of Alabama.

Oct. 21, 1958.

Rehearing Denied Nov. 18, 1958.

J. D. Carroll, Jr., Huntsville, for appellant.

**76**

John Patterson, Atty. Gen., and Geo. D. Mentz, Asst. Atty. Gen., for the State.

PRICE, Judge.

Appellant was convicted on a charge of grand larceny.

The State's evidence tends to show that on March 19, 1956, Mr. Holder, manager of McLellan's store in Huntsville, Alabama, upon his return from lunch, was informed by the cashier, Betty Ivey, who was defendant's wife, that $1,350 of the store's money was missing. Mrs. Ivey was crying and appeared agitated and upset.

Mrs. Roberta Warden, assistant cashier at McLellan's, testified that she finished counting the pick-up from the cash registers at about 11:45 a. m., and shortly thereafter defendant came into the cashier's office where she and Betty Ivey were working; that about 12:00 noon witness went into the employees lounge, which was separated from the cashier's office by a foyer, sat down facing the door leading into the foyer and began eating her lunch; that when she left the office the money was on her desk; that she didn't know whether it was locked up or not because Mrs. Ivey was in there when she left; that about ten minutes later Mrs. Ivey unlocked the lounge door leading into the foyer, leaving it ajar, and asked witness to answer the telephone if it should ring while she was out to lunch with her husband; that this was a solid door with frosted glass top having an opening 12 inches high and 24 inches wide above a counter ledge, through which opening witness saw defendant leave the office with his wife and heard the lock on the door leading into the hall snap shut and heard defendant and his wife go downstairs. Some ten minutes later defendant returned to the employees' lounge and told witness he had come to get his wife's cigarettes and went into the cashier's office; that at this time his face was red and appeared swollen and he was walking fast; that he stayed in the office less than a minute and left by the hall door. Ten minutes later defendant's wife returned and the money was discovered to be missing.

Mrs. Mattie Thorson, a store employee, testified she saw defendant enter the store; that his eyes were swollen and he looked as if he had been asleep; that she saw him ten or fifteen minutes later when he left the store with his wife; that she saw him when he reentered the store alone and went through the rear inside door leading upstairs to the office; that less than ten minutes later he reentered the sales floor through the rear inside door, got a drink at the water cooler at the rear of the store and then walked through the store in a hurried manner, holding his left hand, which was away from her, in his jacket pocket, and left through the front door; that as he made his second exit from the store his face was flushed and his eyes were swollen, looking like some one who had been asleep for a long time.

Mrs. Gladys Berry testified that on March 19, 1956, while she and Mrs. Warden were sitting in the employees lounge Mrs. Warden got up and admitted defendant to the lounge, who said he wanted to go into the cashier's office to get something; that defendant went through the other lounge door, which was open and which led into the foyer across from which was the office; that she didn't know whether defendant returned through the lounge or not; that later defendant's wife, or some one, called Mrs. Warden into the office; that neither she nor Mrs. Warden left the lounge between the time defendant entered

and Mrs. Warden was called to the office; that Mrs. Warden was in the lounge when witness went in; that after defendant left other employees began to return from lunch and go into the lounge.

Mr. Ray Bierne, store employee, testified to seeing defendant first enter the store and leave with Mrs. Ivey and fifteen or twenty minutes later saw him reenter the front door and walk in a hurried fashion toward the rear stairs leading to the office; that five minutes later defendant went out the front door, apparently holding something under the left side of his coat; that he did not see defendant again until the day of trial.

L. D. Wall testified on June 14, 1956, as sheriff, he went to Nashville, Tennessee, arrested defendant and returned him to Madison County.

The evidence disclosed that two weeks after the money was missing the store's bank deposit bag with a cut place in it, together with a deposit slip, for $1,350, in Mrs. Ivey's handwriting, and checks totalling $95, were returned to the store by a fisherman.

No evidence was presented on defendant's behalf.

We have read the evidence in this case en banc, and it is our considered conclusion that the circumstances present only a suspicion that the accused took the money from the cashier's office. We cannot resort to speculation and conjecture in determining the guilt of the defendant. "When the law is respected, when the constitution is maintained, though crime may sometime go unpunished, at least innocence is secure."

We have paraphrased the language of the court in Bell v. State, 36 Ala.App. 390, 56 So.2d 683. We think this case is governed by that case, since the facts are almost identical.

The only distinguishing factor we find in the case at bar is that after the crime accused was not seen in the neighborhood for some three months.

In 22 C.J.S. Criminal Law § 625, page 956, we find: "While standing alone, evidence of flight or concealment is insufficient to establish guilt, * * * such evidence raising no presumption of guilt, see supra § 598, and being consistent with innocence as well as guilt, it may bear on the intent, purpose, or consciousness of guilt of accused, and hence is admissible in evidence as a fact which may be considered by the jury, and from which they may draw an inference, in connection with other circumstances and in the absence of an explanation of the reasons or motive which prompted it, that he is guilty; * *."

In Elmore v. State, 98 Ala. 12, 13 So. 427, 428, the court said, that while evidence of flight is relevant, "Of itself, such evidence would not warrant conviction; * *."

The motion to exclude the State's evidence should have been granted, or failing this, appellant was due the general affirmative charge.

The judgment is reversed and the cause remanded.

Reversed and remanded.