282 So.2d 85

Johnnie Frank LLOYD, alias

v.

STATE.

5 Div. 158.

Court of Criminal Appeals of Alabama.

Aug. 28, 1973.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

BOWEN W. SIMMONS, Supernumerary Circuit Judge.

The defendant appeals from a judgment for murder in the first degree. Punishment was fixed at life imprisonment.

The homicide occurred on February 3, 1972 in a rural building that housed a combination residence and mercantile store. Part of the residence opened on the front, as did the store, while the remaining portion of the residence was on the back side.

The wife of the deceased Letlow left about 6:15 in the morning for work, while her husband, as usual, was left to tend his store.

Hooton & Hooton, Roanoke, for appellant.

Sanford Holt, a propane gas salesman called by the State as a witness, testified that on the morning of February 3, 1972 about 9:40, he, in an effort to deliver gas, tried to get in the front door of the store and, finding it locked, he then tried another front door to his left. Finding it locked, he went to the back door and found it locked. He did not see Mr. Letlow during that time.

A milk salesman, Bobby Simpson, testified that he arrived at the Letlow home

about 9:40 A.M. on February 3, at which time the gas man was there; that he tried the store door and it was locked; he did not see the defendant there, but had seen him in the store on occasions prior to this time.

Winston Hunt, for the State, testified that he lived close to the Letlow store—about 5½ miles on Knight's Mill Road in Chambers County. Further testifying, he said that he saw Mr. Letlow that morning about 6:15 on February 3, 1972, at which time he left to go to work; that Mrs. Letlow worked and, as she had done for many years, rode with him to their place of employment. It appears that Mr. Letlow was alive at that time and on the premises, supra.

About 3:25 P.M. on that day, he took Mrs. Letlow to her home, found a note on the door, took Mrs. Letlow's key and opened the back door, at which time he found the dead body of Mr. Letlow. He then described the position of the body, and to some extent the appearance of the area where the body was found. He let Mrs. Letlow in the front door after which he called the Sheriff. He testified that the whole house was locked and the front door to the store was bolted from the inside.

Mrs. Letlow, the widow of the deceased, testified that her husband carried on his person $500 or $600 to cash checks on the first of the month, and that he had this amount of money on him when she left.

Mrs. Letlow also testified on cross examination that she kept a key to the house and her husband kept a key; also that she did not see the defendant who frequently helped her husband around the store.

On redirect the witness testified that the front door leading into the store was locked from the inside with a thumb bolt.

Mrs. Joe Hall, called by the State, testified that about 7:45 on February 3, 1972 she talked to Mr. Letlow over the phone from her nearby home and solicited his aid in getting her car started. He responded and brought the defendant along; utilized his assistance in getting her car started; that when she left to go to work, Mr. Letlow and the defendant were sitting in her front driveway with her mother and father.

On cross examination, the witness testified that both were real friendly and did not have any difficulty or words. The witness, in response to a question by the Court, stated that it was 8:15 in the morning when she called Mr. Letlow; also that the defendant helped Mr. Letlow around the store.

Mr. Bill Sanders, father of Mrs. Joe Hall, supra, testified that he saw the defendant along with Mr. Letlow just before 8:00 A.M. on February 3, 1972 at his daughter's house, where he and the defendant came to crank his daughter's car. He also stated that they remained there less than five minutes after his daughter left. They helped him (the witness) crank his car, the engine of which had stalled when trying to crank his daughter's car. He testified that Letlow's store was in sight—less than a quarter of a mile; that he left just a few minutes after Mr. Letlow and the defendant left his daughter's house; that he did not hear any shots fired.

Mrs. C. L. Henderson, also called by the State, testified that on February 3, 1972, she lived in a community adjoining Mr. Letlow's; that about 9:00 or 9:30 A.M. on that day, she talked to Mr. Letlow over the phone for about three minutes and placed an order with him for some gas; that the gas was delivered about 9:30 A.M. that morning.

Robert Brooks, called by the State, testified that he lived about a quarter of a mile from Letlow's store or "a little better"; that on February 3, 1972 about 9:00 A.M., the defendant came by his home, stayed approximately ten minutes, and while there he let the defendant have a dollar and took his pocketbook as security; that the de-

fendant then left and went down toward Mr. Landrum's, which was in the direction of Letlow's store; that he came back in about one-half hour and repaid the dollar with four quarters; that was about thirty minutes after he first left the house at about 9:10 A.M. The defendant then left but did not tell him where he was going. The witness said his son married the defendant's sister; that the defendant was a frequent visitor at his home. Further the witness said when the defendant came back, he came from the direction of Letlow's store.

Alva Landrum, a witness called by the State, testified that he lived in the same community with Mr. Letlow; that on February 3, 1972 about 9:50 or 10:00, in the daytime, he saw the defendant coming into his yard; that on getting within seven, eight, or ten feet the defendant said "I will give you $3.00 to run me to LaFayette." The defendant at this time had a "little old suitcase" which he used to fend the dogs which were barking at him. The witness thereupon said the defendant told him "I will give you $3.00 to carry me to La-Fayette right quick." He testified that he brought him to LaFayette and put him off at Boyd's store, at which time he had the suitcase. He requested that the witness carry the empty suitcase back and give it to his sister.

Sheriff James C. Morgan testified that he responded to a call and went to Letlow's store where he found Mr. Letlow dead just inside the door of his residence; that he had six bullet wounds in his body. The witness described the location of these wounds and also described the disarray of the store area where some blood was found. The witness also said he found a fold-over type billfold partially in the deceased's hip pocket, and another on the floor just away from the body. Neither of the purses contained any money. The cash register was closed and contained a small amount of change—nickels, dimes and quarters; that it was about 3:32 P.M. on

February 3, 1972 when he arrived at the scene.

Witness also stated that he knew where Robert Brooks lived, which was about four-tenths of a mile from Letlow's store; that it took him nineteen minutes, on a test walk at a normal gait, to walk from the Brooks' home to Letlow's store and back to the starting point.

The witness testified on cross-examination that he found one .32 caliber bullet behind a chair that was turned over; that he did not find a pistol in his investigation.

A taxi driver, Roosevelt Carr, testified that on February 3, 1972 after 10:00 in the morning, the defendant asked him in La-Fayette to carry him to West Point; that he carried him first to Langley's wood yard where they remained "something after twenty minutes", after which he took him to West Point. The defendant paid him $6.00 for both rides, that is, to the wood yard and then to West Point.

Winston Hunt, being recalled, testified that it was approximately four miles from Robert Brooks' home to the area where the defendant's daddy lived.

Coroner A. C. Farrington testified that the deceased was dressed in a pair of blue carpenter type overalls; that he found a roll of bills, $115.00, in the rule pocket of the overalls; that he did not find money in either of the billfolds; that he found no pistol of any kind.

Richard Roper, State Toxicologist, after qualifying as an expert, testified that he examined the dead body of Mr. Letlow in Opelika, to which point the body was transferred; that he made an external examination of the body about 11:00 P.M. February 3, 1972; that Mr. Letlow at that time had been dead in excess of ten to twelve hours. Later the witness amended his testimony by saying Letlow had been dead ten or fifteen hours prior to 11:00 P. M. February 3, 1972. He also testified

about removing some .32 caliber bullets from the body of the deceased; that the cause of death was "hemorrhage and shock associated with multiple gunshot wounds to the body, which penetrated a major artery and major vein." The witness further testified that he did not compare the removed bullets with any pistol because he had no such weapon.

Sheriff James C. Morgan testified on recall that he found a .22 caliber pistol under the counter of the store, but it had not been fired. He further testified that he went to Detroit for defendant who waived extradition; that the defendant made no statement to him about the case. The State thereupon rested.

We note here that the defendant did not move to exclude the State's evidence. The record does not contain a motion for a new trial.

The defendant, after being sworn, testified in his own behalf. He said he was 19 years of age and reached the 10th grade in school; that he cut grass for Mr. Letlow from time to time. He further testified that he went to Detroit in November 1971 where he was employed by U. S. Shelving Corporation; he thereupon identified a slip of paper representing his first paycheck. This exhibit was admitted into evidence, but is partially illegible.

The witness further stated that he left Detroit by bus for Alabama where he arrived on Saturday night immediately preceding February 3, 1972; that on Thursday morning February 3, 1972, he went to Mr. Letlow's store and at the request of Mr. Letlow he went with him to crank Mrs. Leola Hall's car; that after he and Mr. Letlow got back to the store he left and went to Robert Brooks' house; that this was a little after 8:00 o'clock. He denied shooting or robbing Mr. Letlow; also he denied that he locked the doors. He said that he stayed at Robert Brooks' house little over an hour and after leaving there he went to the home of his sister Rosa Jane Holloway on Knight's Mill

Road; that his sister's home was about one-half mile from the Brooks' home; that he stayed there about fifteen minutes and then returned to the Brooks' home, but he had no judgment as to what time it was. He contended that after leaving the Brooks' home the second time, he went to the house of Harvey Landrum; that he got his suitcase at his sister's home. He said he then went to Boyd's store in La-Fayette with Landrum, where he stayed a while. He then got a taxi and went to West Point where he boarded a 4:30 bus to Detroit, where he was employed.

The witness further testifed that he got laid-off in Detroit a week; came to Alabama and stayed four days; got back to Detroit on Friday evening and started work on Friday night. Also, witness said he had $65.00 when he left Detroit and came back to Alabama. He further testified that on Saturday night following his arrival in Detroit, he learned of the death of Mr. Letlow; that his information came by phone from his sister in Alabama. She told him the Sheriff was looking for him.

On cross-examination, the witness testified that he had worked for Mr. Letlow many times before but never saw him with any money; that before going to Detroit he had worked three or four months at night in Langdale Mill. He stated that he started work in Detroit around January 4, 1972.

The witness further testified that when he came home, he paid $34.00 for his ticket and had $40.00 or $45.00 left. He stated that on Tuesday after his return to Alabama, he helped his brother with some cordwood for which he received $4.00 per cord; that he did not remember how much his brother paid him.

Further testifying, the witness said that when he went to Robert Brooks' house, that he had his money with him and that he did not borrow a dollar from Brooks; that he had $40.00 or $45.00 of his own out of which he paid Brooks a dollar for some whiskey. He contended that he paid the

taxi driver $6.00 and Mr. Landrum $3.00; that he paid a return bus fare of $34.00 after which he had a dollar and some little change; that he had cakes and drank coca colas on his return trip to Detroit.

We think the evidence is positive and clear that some person on February 3, 1972 murdered Mr. Letlow by firing six .32 caliber bullets into his body; that one or more of these bullets caused his death. However, the evidence is entirely circumstantial that the defendant (appellant here) was the person who did the killing. To authorize submission of a criminal case to the jury, there must be substantial evidence tending to prove all elements of the charge; mere scintilla of evidence, in view of presumption of innocence, being insufficient. Ex parte Grimmett, 228 Ala. 1, 152 So. 263(4). This case reversed and remanded Grimmett v. State, 26 Ala.App. 56, 152 So. 262.

Opportunity on the part of the appellant to commit the crime for which he was indicted, tried and convicted or even knowledge of its commission without more, is not sufficient evidence upon which to base a verdict of guilt. Thomas v. State, 19 Ala.App. 499, 98 So. 322; Lang v. State, 252 Ala. 640, 42 So.2d 512. The Supreme Court in Ex parte Acree, 63 Ala. 234 observed:

"* * * The humane provisions of the law are, that a prisoner, charged with a felony, should not be convicted on circumstantial evidence, unless it shows by a full measure of proof that the defendant is guilty. Such proof is always insufficient, unless it excludes, to a moral certainty, every other reasonable hypothesis, but that of the guilt of the accused. No matter how strong the circumstances, if they can be reconciled with the theory that some other person may have done the act, then the defendant is not shown to be guilty, by that full measure of proof which the law requires. * * *"

For circumstantial evidence to be sufficient to justify a jury in convicting upon it, the circumstances proved must not only be consistent with the hypothesis that the defendant is guilty but inconsistent with the hypothesis that he is innocent, and inconsistent with every other rational hypothesis except that of his guilt. Copeland v. State, 23 Ala.App. 91, 121 So. 445(3).

This court held in Bell v. State, 36 Ala. App. 390, 56 So.2d 683(2) as follows:

"When the law is respected, when the Constitution is maintained, though crime may sometimes go unpunished, at least innocence is secure."

We also held in *Bell*, supra, that we cannot resort to speculation and conjecture in determining the guilt of a defendant.

It rarely occurs that two cases present the same identical facts. This is true in DeSilvey v. State, 245 Ala. 163, 16 So.2d 183.

We will not specifically cite other cases collated in the Alabama Digest, Vol. 6, Criminal Law 552(3).

Suffice it to say, the evidence here presents no more than a strong suspicion of appellant's guilt as charged in the indictment. The guilt of the appellant under the evidence is conjectural.

The defendant's requested written charge No. 7 should have been given by the court and its refusal was error.

We hold that the judgment from which this appeal was taken should be and is hereby reversed and remanded.

The foregoing opinion was prepared by Hon. BOWEN W. SIMMONS, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Reversed and remanded.

All the Judges concur.