LEIGH M. CLARK, Supernumerary Circuit Judge.
This is the third appeal in this case. The first was from a conviction of murder in the first degree, which was reversed by reason of the insufficiency of the evidence. Lloyd v. State, 50 Ala.App. 646, 282 So.2d 85. The second was from a conviction of murder in the second degree, in which it was held that by reason of evidence on the second trial which was not presented on the first trial, a jury issue was presented as to the guilt of defendant, but undue restriction upon defendant in the cross-examination of a witness necessitated a reversal. Lloyd v. State, 53 Ala.App. 730, 304 So.2d 232, cert. denied 293 Ala. 410, 304 So.2d 235. The present appeal is from a conviction of murder in the second degree and a thirty-year sentence.
As the evidence on the third trial substantially embraces the evidence on the first trial and includes the additional evidence admitted on the second trial, and there is nothing in the evidence on the third trial to justify a different conclusion from that reached on the second appeal, we hold as we did then that the evidence was ample to support the verdict. Although not necessary to the determination just expressed, we observe also some evidence on the last trial that apparently was not presented on *1060 either of the former trials. It was established on the third trial that Robert Brooks, who testified on the three trials, bought a pistol from defendant a week before Luther Ledlow (victim named in the indictment) was killed. He paid defendant thirty dollars for it. The pistol was picked up by an officer the day after Mr. Ledlow’s death. It was a .38 caliber, the caliber of the bullets found in Mr. Ledlow’s body. An expert in ballistics testified that a firearm comparison test revealed that the weapon did not fire the bullets. According to defendant, he had brought the gun from Detroit. This standing alone did not tend to implicate defendant, but the jury could have well found that it did, when considered with defendant’s testimony, as narrated in the opinion on the first appeal. Therein he attempted to explain his possession of money, including a roll of bills, by saying that he had approximately sixty-five dollars when he left Detroit, he paid thirty-four dollars for a bus ticket, his brother paid him some money' for cutting cord wood, he spent a few dollars for small items such as a little liquor, a ride in a truck to Lafayette and taxi fare to West Point, but he said nothing about the relatively sizeable sum of thirty dollars he obtained for the pistol. There was also evidence on the last trial that the suitcase he had with him as he left the vicinity of the crime, which is referred to in the opinion on the first appeal, was left by him, empty at the time, with the persons who took him in the truck to Lafayette. Also worthy of note was testimony on the last trial to the effect that no fingerprints were discoverable anywhere in the residence-store in which Mr. Ledlow was killed. This suggests a sophisticated, rather than a naive, murderer. It was for the jury to say whether defendant possessed either characteristic.
We will consider appellant’s assertions of error in the order presented in appellant’s brief.
The court refused defendant’s requested written charge as follows:
“5. I charge you, Ladies and Gentlemen of the Jury, that if the evidence in this case presents no more than a strong suspicion of the Defendant’s guilt as charged in the indictment, then the evidence is only conjectural and you must find the Defendant not guilty.”
In some respects, the charge tracks language of the opinion in the first appeal of this case:
“Suffice it to say, the evidence here presents no more than a strong suspicion of appellant’s guilt as charged in the indictment. The guilt of the appellant under the evidence is conjectural.”
There is a noticeable difference however. What is meant by one’s guilt being conjectural is clear. What is meant by the conjec-turableness of evidence is far from clear. The conjecturableness of the guilt of appellant on the first trial was not by reason of any conjecturableness of the evidence. We are not saying that even if the charge requested had been as clear as the language quoted from the opinion on the first appeal, there would have been error in the court’s refusal of the charge. When the evidence in a case presents no more than a strong suspicion of defendant’s guilt, when the guilt of the appellant under the evidence is conjectural, the requested general affirmative charge in favor of the defendant should be given. The court fully charged the jury on the matter of the burden of proof, the presumption of innocence, the necessity for proof by the evidence of guilt beyond a reasonable doubt and to a moral certainty, and in a given charge stated:
“2. I charge you Ladies and Gentlemen of the Jury that you cannot resort to speculation and conjecture in determining the guilt of the Defendant in this cause.”
There was neither error nor injury to defendant in the court’s refusal to give Charge 5.
Coroner A. C. Farrington, who had been coroner of Chambers County for twenty years, personally examined Mr. Ledlow the afternoon of his death and was allowed to testify, over the objection of defendant, that in Mr. Farrington’s opinion the death of Mr. Ledlow was caused by “internal hemorrhaging and shock as a result of gun *1061 shot wounds to the lefthand side of his body.” The cause of death can often become a troublesome medical question. A coroner of twenty years experience would not necessarily be qualified to testify as to the cause of the death of every person, but unquestionably the witness was qualified to testify as to the cause of death under the circumstances of this case. Hicks v. State, 247 Ala. 439, 25 So.2d 139; Smith v. State, 282 Ala. 268, 210 So.2d 826; Williams v. State, 255 Ala. 229, 51 So.2d 250; Cobb v. State, 50 Ala.App. 707, 282 So.2d 327.
The witness Robert Brooks lived about a half of a mile from Mr. Ledlow’s home and store. He testified that defendant came to his home about 9:00 A.M., that he left defendant’s home about 9:30 A.M., that about thirty minutes thereafter he saw defendant again close to the witness’ home. It appears that probably it was the State’s contention that it was during that thirty-minute period that Mr. Ledlow was murdered and defendant was endeavoring to show that it was not likely that defendant could have walked from the home of Brooks to the home of Ledlow and back and robbed and murdered Mr. Ledlow between the two times he was seen by Brooks. On cross-examination of Brooks, he was asked if it wouldn’t take “about twenty, twenty-five minutes to walk” from the witness’ house to Mr. Ledlow’s store. He was asked whether on a prior trial he had testified that it would take approximately “twenty, twenty-five minutes” to go from his house to Mr. Ledlow’s store, and he said, “I believe I could walk from there and back in twenty-five minutes.” Thereafter, Sheriff Morgan was called by the State as a witness. During his testimony he was asked whether he had walked the Ledlow-Brooks distance at a normal walk and how long it had taken him. To the question there was an objection on the ground that “This is a test run by a person not involved in the situation at a much later date.” The objection was overruled, and the witness’ answer was that it took him nineteen minutes to walk “from the home of Robert Brooks to the home and store of Luther Ledlow and back.” In our view, it is so well established, as a matter of common knowledge, that it wouldn’t take the average young man twenty or twenty-five minutes to walk one-half of a mile that it wasn’t necessary to show that the Sheriff in a normal walk walked twice that distance in nineteen minutes, which approximates one-half the rate of speed of a military march. The evidence was not subject to the objection assigned. There was nothing unfair or harmful about the experiment. There were probably some faster walkers on the jury.
“Out of court experiments are admissible where there is a substantial similarity between the essential conditions of the experiment and of the occurrence, and much is left to the discretion of the trial court in determining these similarities. Neelley v. State, 261 Ala. 290, 74 So.2d 436.” Madden v. State, 40 Ala.App. 271, 112 So.2d 796, cert. denied 269 Ala. 697, 112 So.2d 800.
Appellant complains that the witness Johnnie Walker, called by the State, was allowed to testify, over objection of defendant, that an incriminating statement [1] was voluntary and spontaneous. The ruling was not made in the presence of the jury. The testimony referred to was during the voir dire interrogation of the witness out of the presence of the jury, in order for the court to determine the circumstances of the incriminating statement. It was a very lengthy interrogation. At one time during the direct examination, the court did, over an objection by defendant, allow the witness to say that the statement was voluntary. On cross-examination, also out of the presence of the jury, the witness testified in answer to a question by defendant that the statement was spontaneous. After the voir dire examination and after a ruling by the court adverse to defendant on the question of whether the State could proceed to show by the witness the statement of defendant and the jury had re *1062 turned to the courtroom and the witness had been asked some questions by the State, the following occurred:
“Q State whether or not a spontaneous and voluntary statement at that time?
“MR. HOOTON: I object to that, if the Court please.
“THE COURT: What is the ground of your objection?
“MR. HOOTON: Well, if the Court please, for one thing it requires a conclusion of this witness and—
“THE COURT: —all right. Sustain the objection. Take a new question.”
In the voir dire of the State on the hearing out of the presence of the jury, the prosecution was endeavoring to show that the statement made by defendant was volunteered by him, that is, that he was not being interrogated at the time. It seems that it was in that context only that the word “voluntary” was used. At any rate, the evidence complained of was not for the jury. The ruling of the court on the volun-tariness of the incriminating statement was clearly influenced by the rest of the evidence on the hearing out of the presence of the jury and not on the choice of the word “voluntary” in the question to the witness or any conclusion of the witness in his answer. No error prejudicial to defendant occurred in connection with the admission in evidence of the incriminating statement.
Appellant also seeks a reversal on an asserted ground similar to the one made the basis for a reversal on the second appeal, i. e., an undue restriction upon defendant’s right of cross-examination of the witness Walker. On the last trial, however, the questions asked the witness on cross-examination were with reference to what someone else had told him that defendant had said and whether the witness had heard someone say something about Robert Brooks. These questions were objectionable as calling for hearsay testimony.
Finding no error in the record prejudicial to defendant and, as hereinabove indicated, that the evidence was sufficient to sustain the verdict of the jury, we conclude that the judgment should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.

. “I done killed me one white son-of-a- . and I’m going to get me some more.”, substantially the same as quoted in the opinion on the second appeal.