[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1213 
Appellant was indicted by separate indictments by a Cherokee County Grand Jury for escape in the second degree and theft of property in the first degree, conduct proscribed by § 13A-10-32
and § 13A-8-3, Code of Alabama 1975, respectively. The two charges arose out of the same incident. Andrews entered pleas of not guilty, and the cases were consolidated and tried to a jury. He was convicted as charged in each indictment, and sentenced as a habitual felony offender to life imprisonment on the theft of property charge and fifteen years for escape. The sentences were ordered to run concurrently. Appellant appeals from these convictions.
Upon conclusion of the State's case, Andrews moved to exclude the evidence on the ground that the State had failed to prove a prima facie case on either of the charges. The motion was denied by the trial court. The correctness of this ruling is the main issue raised on appeal.
 I
Appellant's first contention of error is that the trial court committed reversible error in denying appellant's motion to exclude the evidence due to the State's failure to prove that appellant escaped from custody.
Appellant was charged with escape in the second degree. Such conduct is proscribed by § 13A-10-32, Code of Alabama 1975, which states in pertinent part as follows:
 "(a) A person commits the crime of escape in the second degree if he escapes . . . from a penal facility."
A penal facility is defined in § 13A-10-30, Code of Alabama 1975, as follows:
 "(b)(3) Penal facility. Any security correctional institution for the confinement of persons arrested for, charged with or convicted of a criminal offense, including but not limited to the following security facilities: the state penitentiary and any branch thereof or any county or city jail."
When a motion to exclude the State's evidence is made on the ground that the State has failed to establish a prima facie case, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In its determination, the trial court should consider only the evidence before the jury at the time the motion is made and must consider it most favorably to the State. *Page 1214 
When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit it to the jury, and, in such a case, this court will not disturb the trial court's decision. Koger v. State,443 So.2d 1343 (Ala.Crim.App. 1983), Sullivan v. State, 441 So.2d 130
(Ala.Crim.App. 1983); Bozeman v. State, 401 So.2d 167
(Ala.Crim.App.), cert. denied, 401 So.2d 171 (Ala.), cert. denied, 454 U.S. 1058 (1981); Johnson v. State, 378 So.2d 1164
(Ala.Crim.App.), writ quashed, 378 So.2d 1173 (Ala. 1979); A.R.Crim.P.Temp. 12.1 (a),(b), and 12.2 (a)-(c).
The State's evidence before the jury at the time of the motion to exclude showed that the jailer, Wooten, came to work at the Cherokee County jail early in the morning of May 6, 1983. He relieved the night jailer, who immediately left the jail. He, therefore, was apparently the only person in the jail other than the prisoners. Cell 2 contained appellant, Ronnie Gwin, and two other prisoners. The jailer inadvertently unlocked Cell 2 and Gwin came out. Against the jailer's wishes, Gwin went downstairs to use the telephone. The jailer went downstairs and brought Gwin back to his cell. When the jailer got near the cell, Gwin and appellant "grabbed" him by the arms and forced him into Cell 4 and locked the door. Appellant demanded the jailer's car keys, and the jailer gave them to him. Gwin took the jail keys from the jailer. Appellant, Gwin and another prisoner named Sidney Rowland left the jail. Appellant was familiar with the jailer's automobile and where he parked it. The automobile which the jailer used belonged to his wife and was parked behind the jail. A short time after the three prisoners left the jail, the jailer was released, and he discovered that his wife's automobile was missing. Two days later the automobile was found abandoned in Jacksonville, Alabama, with the keys in the ignition. They were the same keys that the jailer had given appellant. The jailer testified that appellant, Gwin, and Rowland were "prisoners" in the jail at the time of their departure. Chief Deputy Sheriff Ray Wynn testified that on May 10, 1983, four days after the escape, he went to Anniston, where appellant was being held in the Calhoun County jail, and brought him back to the Cherokee County jail. He further testified that appellant was not in the Cherokee county jail from May 6 to May 10.
Appellant argues that a mere showing that he was a prisoner in the county jail was insufficient, and that the State in order to make out a prima facie case of escape in the second degree was required to prove the underlying legal authority for the prisoner's custody.
On the other hand, the State argues that appellant's contentions and cited authorities are based upon the old escape statutes, and that the new statute (previously cited) under which appellant is charged, only requires proof that appellant escaped from a "penal facility" and does not require proof of the underlying legal authority for the detention or proof of "custody" as defined in the statute.
Appellant cites three cases, Eady v. State, 369 So.2d 841
(Ala.Crim.App.), cert. denied, 369 So.2d 843 (Ala. 1979);Gibson v. State, 48 Ala. App. 237, 263 So.2d 694 (1972); Artripv. State, 41 Ala. App. 492, 136 So.2d 574 (1962); and to support his contention that proof of escape from "custody," as such term is defined in the escape statute, is essential to a valid conviction of escape in the second degree. These cases were decided prior to January 1, 1980, the date the new criminal code came into effect. These cases dealt with a previous escape statute (Tit. 14, § 153, Code of Alabama 1940, recompiled 1958; recodified as § 13-5-65, Code of Alabama 1975), which is substantially different from the present statute with which we are concerned. Thus, these pre-1980 cases are not useful in determining the essential elements to support a conviction of escape in the second degree under the new statute.
The former prisoner escape statutes (§ 13-5-60 through § 13-5-71, Code of Alabama 1975) were a confusing and helter-skelter treatment of the subject. The new statutes (§13A-10-30 through § 13A-10-35) *Page 1215 
constitute a complete revision and updating of the law of escape. See Commentary, § 13A-10-30 through § 13A-10-33. Alabama's new escape statute was based upon the New York Penal Code. See, New York Revised Penal Law §§ 205.00, 205.05, 205.10, and 205.15. Second degree escape under the New York statute (§ 205.10) is substantially the same as second degree escape under the Alabama statute (§ 13A-10-32).
The commentary to § 13A-10-32 states: "This section covers escape from a penal facility regardless of the underlying charge because a penal facility is an institution which has substantial security requirements and there is, therefore, a great element of danger in planning and executing escapes. A penal facility may be a state prison, jail or reformatory." Section 205.05 of the New York Penal Code contains a similar commentary.
To find one guilty of escape in the first degree, §13A-10-31, and escape in the third degree, § 13A-10-33, under the present Alabama escape statute, requires proof of escape from "custody." "Custody" is defined as "[a] restraint or detention by a public servant pursuant to a lawful arrest, conviction or order of court, but does not include mere supervision of probation or parole, or constraint incidental to release on bail." Ala. Code (1975) § 13A-10-30 (b)(1). The legislature omitted the requirement that the escape be from "custody" in the section proscribing escape in the second degree, § 13A-10-32. It is apparent that the Alabama legislature did not intend to require proof of "custody" as defined or proof of the legality of the underlying charge in delineating the requirements for proof of escape in the second degree. In the case of Murphy v. State, 399 So.2d 340, 346
(Ala.Crim.App.), cert. denied, 399 So.2d 347 (Ala. 1981), Judge Clark, speaking for this court, in discussing the requirement for proof of "custody" stated that proof that the defendant was in "custody" was an essential element of § 13A-10-31 (first degree escape), but not an element of § 13A-10-32 (second degree escape). Murphy in this regard, was cited with apparent approval by Presiding Judge Bowen in Dietz v. State,474 So.2d 120 (Ala.Crim.App. 1984).
In the instant case the evidence showed that just prior to his departure appellant was a "prisoner" in the Cherokee County jail and that he was incarcerated in Cell 2. A "prisoner" is defined in Black's Law Dictionary (4th ed. 1951), as "one who is deprived of his liberty; one who is against his will kept in confinement or custody." A reasonable inference to be drawn from the evidence was that appellant was confined in the Cherokee County jail. The evidence further revealed that appellant voluntarily departed from the jail without legal authorization and remained absent until apprehended several days later and returned to the jail by the sheriff. The term "escape" as used in the law is to be given its ordinary, accepted meaning and connotes in this case an unauthorized and voluntary departure from the penal facility. A prisoner's unauthorized absence from his legal place of detention makes out a factually presumptive case of escape. King v. State,46 Ala. App. 635, 247 So.2d 677 (1971).
Appellant's contention that the State was required in this case to prove "custody" as defined in the statute or the legality of the underlying charge upon which his confinement was based is without merit. This is not a required element of proof in second degree escape. The State, in making out a prima facie case of second degree escape, must show that the defendant escaped from a penal facility. A county jail is a penal facility. Of necessity, it must show that the defendant was confined in the penal facility; otherwise there could be no escape. "Prisoner" connotes confinement.
We find that the State's evidence was sufficient to prove a prima facie case, and if believed beyond a reasonable doubt by the jury, was sufficient to sustain a conviction of escape in the second degree. *Page 1216 
 II
Appellant's second contention of error is that the trial court committed reversible error in denying his motion to exclude the evidence supporting the charge of first degree theft due to the State's failure to prove that appellant had stolen the automobile belonging to Ms. Wooten.
A person commits the crime of theft of property in the first degree if he knowingly obtains or exerts unauthorized control over a motor vehicle, the property of another, with intent to deprive the owner of said property. §§ 13A-8-2, 13A-8-3 (b). It is a class B felony. The evidence offered by the State disclosed that appellant took the car keys from Wooten, the jailer, when appellant and Gwin "grabbed" him and locked him in a cell; that appellant, Gwin, and Rowland left the jail together without authorization; that the same keys were found in the ignition of the car several days later when the car was found in Jacksonville; that appellant was familiar with the car and where Wooten usually parked it; and that it was discovered that the car was missing immediately after appellant's departure from the jail. The ownership of the automobile is not questioned. Wooten testified that he did not authorize anyone to take the automobile.
It is true that the evidence of theft of the automobile is largely circumstantial; however, circumstantial evidence is not inferior evidence, but is given the same weight as direct evidence if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Carpenter v. State, 408 So.2d 559
(Ala.Crim.App. 1981), cert. denied, 408 So.2d 561 (Ala. 1982);Sumeral v. State, 39 Ala. App. 638, 106 So.2d 270 (1958). A reasonable inference is the inference of a fact in issue which follows as a natural consequence from known collateral effects.White v. State, 294 Ala. 265, 314 So.2d 857, cert. denied,423 U.S. 951, 96 S.Ct. 373, 46 L.Ed 288 (1975). For circumstantial evidence to be sufficient to justify a jury in convicting upon it, the circumstances proved must not only be consistent with the hypothesis that the defendant is guilty, but inconsistent with the hypothesis that he is innocent, and inconsistent with every other rational hypothesis except that of his guilt. Lloydv. State, 50 Ala. App. 646, 282 So.2d 85 (1973). Circumstantial evidence justifies a conviction only when it is inconsistent with any reasonable theory of innocence. Tanner v. State,291 Ala. 70, 277 So.2d 885 (1973). The fact that the car keys which appellant took from the jailer were found in the ignition of the abandoned car justifies a strong inference that appellant took the automobile. The evidence that the three fled the jail together and later were together in Jacksonville, coupled with the other evidence, supports a strong inference that they fled in Mrs. Wooten's automobile. In fact, the evidence does not support any other reasonable or logical conclusion.
In view of the facts delineated above, we believe that the State presented a prima facie case of theft in the first degree. We are of the opinion that the legal evidence before the jury at the time of the motion to exclude was sufficient for the jury by fair inference to find the appellant guilty beyond a reasonable doubt. The trial court correctly overruled the motion to exclude the State's evidence.
In addition, a jury question was presented as to whether appellant was Gwin's and Rowland's accomplice. Under the complicity statute, § 13A-2-23:
 "A person is legally accountable for the behavior of another constituting a criminal offense if, with the intent to promote or assist the commission of the offense:
 (1) He procures, induces or causes such other person to commit the offense, or
 (2) He aids and abets such other person in committing the offense. . . ."
A reasonable inference could be drawn from the evidence that appellant, Gwin, and Rowland, having fled the jail together, took Mrs. Wooten's automobile in order to make good their escape. It does not matter that appellant did not drive the automobile. He *Page 1217 
is legally accountable for the behavior of the others constituting a criminal offense if, with intent to promote or assist in the commission of the offense, he aids or abets the others in committing the offense. There was substantial legal evidence before the jury, at the time appellant's motion was made, from which the jury by reasonable and fair inference could have found that appellant had participated principally, or as an aider and abettor in the theft of the automobile. That there was no eyewitness testimony that appellant was ever in the vehicle does not force the conclusion that he did not participate in the taking of it from the parking lot at the jail and in the asportation of it to Jacksonville. Jordan v.State, 392 So.2d 1230 (Ala.Crim.App. 1980), cert. denied,392 So.2d 1233 (Ala. 1981).
 III
Appellant's next issue is stated as follows: "Did the trial court commit reversible error in overruling the defendant's ownership of the property alleged in the indictment to have been stolen by the defendant?" This issue is not argued in appellant's brief, and the issue as presented is unclear. If appellant is referring to the sufficiency of the evidence to prove ownership of the property alleged to have been stolen, there was sufficient evidence of ownership presented by the State. The evidence shows that Mrs. Wooten was the owner of the automobile, and that her husband, the jailer, was using it to go to and from work. The ownership of the automobile was never questioned. If appellant is referring to a possible variance between the indictment and the proof, it is clear that there is no such variance. We find no merit in this issue. In any case, we are not required to consider matters on appeal unless they are presented and argued in brief. Vinzant v. State,462 So.2d 1037 (Ala.Crim.App. 1984). Millins v. Millins, 416 So.2d 1063
(Ala.Civ.App. 1983); A.R.A.P. 28 (a)(3), (5).
 IV
The final contention of appellant is that the trial court erred in overruling his objection to testimony that he was a "prisoner." The questioned testimony arose while the jailer, Wooten, was on the witness stand, and is set out in pertinent part as follows:
 "Q. And what was he [the defendant] doing when you first saw him?
 "A. He was just standing there when I opened the door.
"Q. What did you do?
"A. I was going to put him back in the cell.
 "Q. And Perry Michael Andrews was a prisoner there in the jail on that morning, is that correct?
 "Mr. Shumaker: We're going to object, if the court please. It calls for a conclusion of this witness, calls for evidence outside the realm of this witness's knowledge. There's higher and better evidence of that information. It's immaterial and irrelevant, and it's leading.
"The Court: Overrule the objection.
"Mr. Shumaker: Note our exception.
"Q. What was your answer, Mr. Wooten?
"A. Yes sir, he was."
In 3 Wharton's Criminal Evidence § 581, § 582 (C. Torcia 13th ed. 1973), we find the following:
 "In general the testimony of a lay witness may take the form, not of opinions or conclusions, but of facts of which he has personal knowledge. However, a lay witness may testify in the form of an opinion if, by doing so, he is able more effectively and accurately to verbalize the facts perceived by him. Of course, the problem is aggravated because the line between `fact' and `opinion' is not always clear. In a somewhat strained sense, the testimony of a witness always consists of opinion, in that certain stimuli had originally been received by the witness' senses which, on the basis of experience, were translated or interpreted by him to indicate the existence or nonexistence of a certain fact. In any event, in determining whether an opinion is admissible, *Page 1218 
the trial judge must necessarily exercise a large measure of discretion.
". . .
 "A lay witness may testify in the form of an opinion if, by doing so, he is able more effectively and accurately to verbalize the facts perceived by him; and he may be cross-examined as to the facts upon which such opinion is based. He may express his opinion in an appropriate case as to what he saw, heard, smelled, or otherwise perceived. . . . The opinion must be based upon facts perceived by the witness himself, and not upon statements made by others in respect of such facts.
 "Although the opinion should be accompanied by the facts upon which it is based, in some cases the witness may express his opinion without first stating the underlying facts. . . ." (Citations omitted.)
See also William's Alabama Evidence § 156 (1967); C. Gamble,McElroy's Alabama Evidence, § 127.01 (1)-(4) (3d ed. 1977).
The testimony of the jailer that appellant was a "prisoner" in the jail just prior to his unauthorized departure, appears to fall in the borderline between a so-called statement of opinion and a statement of fact. The jailer would clearly be in a position, and would be peculiarily qualified, to know whether appellant was a prisoner in the jail at the time. Appellant was one of the jailer's charges, and the jailer had the responsibility to see that he remained in confinement. We believe that if this testimony constitutes an opinion of the witness it is one of those non-expert opinions which are admissible in the context of this case.
His opinion that appellant was a "prisoner," if indeed it can be called an opinion, constituted a collective fact or a shorthand way of giving the facts, and consequently does not constitute a violation of the opinion evidence rule. Johnson v.State, 15 Ala. App. 194, 72 So. 766 (1916); C. Gamble, McElroy'sAlabama Evidence § 127.01 (3).
In addition, we think that the competency of the jailer to testify that appellant was a "prisoner," and the admissibility of the evidence was a matter which addressed itself to the sound discretion of the trial court. This court should not reverse the decision of the trial court in the absence of a clear abuse of such discretion. We find no abuse of discretion here. Appellant had an opportunity to cross-examine the jailer as to the truthfulness and accuracy of his testimony that appellant was a prisoner in the jail, but did not do so. In fact, the status of appellant as a prisoner in the jail was not seriously questioned. In addition, appellant's counsel elicited from the jailer on cross-examination the statement that appellant and Gwin were prisoners in Cell 2. Questions asked by appellant's counsel assumed that appellant was an "inmate" in the jail. The testimony of the jailer that appellant was a "prisoner" was properly admitted.
We have examined the entire record in this case and find no errors prejudicial to the rights of appellant. We hold that under the State's evidence, and all reasonable inferences to be drawn therefrom, the evidence is sufficient to sustain a jury verdict of guilty of escape in the second degree and theft of property in the first degree, as charged in the indictments, beyond a reasonable doubt, and that the trial court did not err to the prejudice of appellant in overruling his motions to exclude. The judgments of the trial court in this case are due to be, and are hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 1219