The grand jury of Pickens County indicted the appellant and charged her in a three-count indictment with voting more than once or depositing more than one absentee ballot for the same office as her vote, or casting illegal or fraudulent absentee ballots. This is a companion case to Wilder v. State,401 So.2d 151 (1981).
The indictment in this case, omitting the formal parts, reads as follows:
 "The Grand Jury of said County charge that, before the finding of this indictment, Maggie S. Bozeman, whose name to the Grand Jury is otherwise unknown:
"COUNT ONE
 "did vote more than once, or did deposit more than one ballot for the same office as her vote, or did vote illegally or fraudulently, in the Democratic Primary Run-off Election of September 26, 1978,
"COUNT TWO
 "did vote more than once as an absentee voter, or did deposit more than one absentee ballot for the same office or offices as her vote, or did cast illegal or fraudulent absentee ballots, in the Democratic Primary Run-off Election of September 26, 1978,
"COUNT THREE
 "did cast illegal or fraudulent absentee ballots in the Democratic Primary Run-off Election of September 26, 1978, in that she did deposit with the Pickens County Circuit Clerk, absentee ballots which were fraudulent and which she knew to be fraudulent, against the peace and dignity of the State of Alabama."
After a two-day trial which ended on November 2, 1979, the appellant was found guilty as charged in the indictment and sentenced to four years imprisonment. She gave notice of appeal and filed a motion for a new trial. The motion was subsequently denied when no testimony or argument was made on behalf of the motion.
The evidence presented at trial was substantially as follows:
Ms. Janice Tilley's testimony concerning absentee voting procedures was substantially similar to her testimony inWilder, supra. Ms. Tilley stated that the week preceding the September 26, 1978 Democratic Primary Run-off Election she gave the appellant approximately twenty-five to thirty absentee voting applications. Ms. Tilley testified that the appellant came to the Pickens County Circuit Clerk's office requesting the applications on several occasions. Ms. Tilley specifically remembered seeing the appellant on September 25th in the company *Page 169 
of Julia Wilder. Ms. Tilley recalled seeing the appellant in a car outside the clerk's office at that time, but she did not remember whether appellant herself returned any ballots to the office. Ms. Tilley noticed that a number of ballots were mailed to the same address, 601 Tenth Avenue Northwest, Aliceville, Alabama.
During cross-examination, Ms. Tilley testified that there is no requirement that applications for absentee voting be picked up by the voters themselves.
Pickens County Sheriff Louie Coleman's testimony was substantially the same as his testimony in Wilder, supra.
Mr. Charles Tate testified basically concerning his participation in investigating the voting irregularities in the September, 1978 election. In counting the ballots which had been double locked in the ballot box, Investigator Tate observed that thirty-nine of the ballots had been notarized by Paul C. Rollins. As part of his investigation, Mr. Tate examined the Pickens County Circuit Clerk's records to verify whether corresponding applications had been filed for the absentee ballots, which he found to be the case.
During cross-examination, Mr. Tate testified that the thirty-nine ballots, notarized by Mr. Rollins, had all been marked to vote for the same person.
Mr. Paul L. Rollins, a notary public from Tuscaloosa, testified that he had known the appellant nine or ten years. Mr. Rollins was shown several of the thirty-nine ballots he notarized on September 23, 1978 in his office in Tuscaloosa. All of these ballots had not been signed in his presence and he was not personally acquainted with those persons who had signed. Mr. Rollins stated that appellant, Julia Wilder and two other ladies brought the ballots to his office and were present when he notarized them. He further testified that he had talked with the appellant about notarizing the ballots.
On cross-examination, Mr. Rollins stated that he advised the appellant, Ms. Wilder and the other two ladies that the persons signing the ballots were supposed to be in his presence. Mr. Rollins testified that prior to notarizing the ballots he received two telephone calls pertaining to the ballots and that one of the calls was from the appellant. Mr. Rollins stated that he was paid for his services and that he subsequently went to Pickens County to find those persons who had allegedly signed the ballots. He had the appellant's assistance on that occasion, however, he was sure he did not go to Pickens County prior to September 26, 1978.
Mrs. Maudine Latham testified that she was a registered voter of Pickens County and stated that she signed an application to vote absentee in the September 26, 1978 Democratic Primary Run-off Election. She testified that she never received a ballot to vote.
Mrs. Annie B. Phillips, Mrs. Mattie O. Gipson and Mr. Nat Dancy's testimony was substantially the same as their testimony in Wilder, supra.
Mrs. Janie Richey testified that Julia Wilder helped her to vote absentee in the Democratic Primary Run-off Election. She had no objection to the way Ms. Wilder marked her ballot.
Mrs. Fronnie B. Rice testified that she voted absentee in the Democratic Primary Run-off Election, and that her application and ballot came in the mail. She stated that she marked her "X's" without assistance and then signed her name on the ballot. Mrs. Rice gave her ballot to Julia Wilder. She did not know Paul C. Rollins.
Ninety-three-year-old Lou Sommerville testified that she was a registered voter in Pickens County and that Julia Wilder assisted her in voting in the September 26, 1978 Democratic Primary Run-off Election. Mrs. Sommerville stated that she placed her ballot in the box at the polls. Mrs. Sommerville insisted that Julia Wilder and her daughter were the only persons who had ever assisted her in voting absentee, and she made her own "X" mark. Mrs. Sommerville did not know Paul C. Rollins.
Sophia Spann, whose absentee ballot was notarized by Paul Rollins at the appellant's *Page 170 
request, testified that she always voted in Cochran, Alabama, and that she had never voted in Aliceville. Ms. Spann stated that she had never voted an absentee ballot, but that the appellant had come to her house and had talked to her about it. She had known the appellant all her life. On the occasion the appellant talked with Ms. Spann, Ms. Spann testified that the following conversation occurred:
 "She just asked me because my husband was sick. And she asked me did I want her to vote for me. And I wouldn't have had to come over to Aliceville.
 "I said, `maybe. I don't have to go to Aliceville. I votes in Cochran.' I haven't voted in Aliceville in my life. I votes here. Just started to voting right in Cochran. That's all I vote." [Emphasis added.]
Ms. Spann denied ever making application for an absentee ballot, or to having ever signed her name to one. See Wilder, supra, and the attached appendix.
On cross-examination, Ms. Spann testified that she knew Julia Wilder, but "I don't know her nothing like I do Maggie." She denied that Julia Wilder had ever been to her house and further denied ever having discussed voting with her on any occasion and said, "I don't know anything about that."
Ms. Spann testified that the appellant talked to her before voting time. "She thought I had to come to Aliceville and she was helping me. And I told her I didn't have to go to Aliceville, I votes in Cochran, and I didn't need the help." Ms. Spann next testified that when she went to Cochran to vote, a voting official told her she had already voted in Aliceville; "Somebody had voted for me over at the Aliceville. . . ."
From the record:
"Q. A question like that came up?
 "A. Yes, sir. When I walked in, Mrs. Charlene said, there's my mama. How come you so late? . . . . So, she said, `well, that's all right. Somebody done voted for you over at the Aliceville,' and she showed it to me. And she asked me did I know that writing. I didn't know that writing.
"Q. Now, who told you that?
 "A. The lady down at Cochran, the lady, Mrs. Charlene, Mr. Hardy Baldwin's wife.
 "Q. Did she tell you how she come to know that you had voted?
 "A. It was in the box at Cochran. The paper was in the box and he [sic] got it and showed it to me and asked me did I know that handwriting. I didn't know it. That's all of it." [Emphasis added.]
Mrs. Lucille Harris' testimony was substantially the same as her testimony in Wilder, supra.
At the conclusion of Mrs. Harris' testimony the State rested its case and appellant's motions to exclude were denied. The defense did not present a case. Closing arguments were had and the trial court properly charged the jury as to the law, there being no exceptions taken.
 I.
Section 17-23-1, Code of Alabama 1975, is constitutional.Wilder, supra.
 II.
The indictment in this case, which is identical in pertinent part to the indictment in Wilder, supra is constitutionally valid. Wilder, supra.
 III.
The evidence, although circumstantial to a large degree and confusing in several instances, was sufficient to support the jury's verdict. In reviewing the sufficiency of circumstantial evidence the test to be applied is "`whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. (Citations omitted).'"Dolvin v. State, 391 So.2d 133, 137 (Ala. 1980); Cumbo v.State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). *Page 171 
On review, this court is required to consider the evidence in the light most favorable to the prosecution. McCord v. State,373 So.2d 1242 (Ala.Cr.App. 1979); Coleman v. State,37 Ala. App. 406, 69 So.2d 481 (1954). This court must take the evidence favorable to the prosecution as true, and accord to the State all legitimate inferences therefrom. Johnson v.State, 378 So.2d 1164 (Ala.Cr.App.), cert. denied,378 So.2d 1173 (Ala. 1979). Circumstantial evidence must be accorded the same weight as direct evidence when it points to the accused as the guilty party. Locke v. State, 338 So.2d 488 (Ala.Cr.App. 1976). The truthfulness of the testimony was for the triers of fact. May v. State, 335 So.2d 242 (Ala.Cr.App. 1976).
Therefore, we conclude, after according the verdict all reasonable presumption of correctness, that the evidence was sufficient to support the verdict. We are convinced that the verdict was not wrong or unjust and was not patently against the weight of the evidence. Bridges v. State, 284 Ala. 412,225 So.2d 821 (1969).
 IV.
There is no merit to appellant's final argument that her constitutional rights were violated when the State used its peremptory strikes to exclude all blacks from the jury venire. This question was definitively answered in Swain v. Alabama,380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); Thigpen v.State, 49 Ala. App. 233, 270 So.2d 666; Carpenter v. State,404 So.2d 89 (Ala.Cr.App. 1980).
We have searched the record for error prejudicial to appellant and have found none, therefore, the judgment of conviction by the Pickens Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.