The appellant, James Arthur Sullivan, was charged by an indictment returned against him by the Grand Jury of Jefferson County with theft of property in the first degree. He entered a plea of not guilty, was found guilty as charged in the indictment of theft in the first degree, and duly sentenced to be imprisoned in the penitentiary for a term of forty-two months. He appeals to this Court.
The appellant was represented at all proceedings in the trial court, and is represented in this Court by the same counsel appointed by the trial court. This appeal was submitted to this Court on briefs.
The appellant claims in his brief that the trial court erred to his prejudice when it overruled his motion for judgment of acquittal at the close of the state's evidence on the grounds that the state has failed to prove the element of deception, and the facts do not sustain a probable cause to believe the crime was committed, and, also, the facts at this point, as presented by the state, did not support the allegations the state has made in the indictment. This presents to this Court the sufficiency of the state's evidence, at the time it rested its case, to sustain the jury verdict of guilty.
The indictment charges that the appellant did knowingly obtain, by deception, control over seven thousand six hundred eighty dollars and ninety-seven cents of the lawful currency of the United States of America, a more particular description and denomination of which is to the Grand Jury otherwise unknown, the property of Bonanza Central Corporation, a corporation, with the intent to deprive the owner of said property, contrary to Section 13A-8-3 of the Alabama Criminal Code.
State's evidence tended to prove that in October and November, 1981 Mr. Phil Gross owned and operated four Bonanza Restaurants in the City of Birmingham, Jefferson County, Alabama, and had hired the supervisory personnel, managers, and assistant managers, for the past fifteen years. That he had hired the appellant as an assistant manager trainee, and then as an assistant manager of the restaurant on 21st street. That the appellant had been assistant manager of the restaurant for about six months before November 2, 1981. That as assistant manager the appellant had the responsibility to fill out and sign a daily report each night that he was on duty, and close the *Page 132 
restaurant. The daily report shows the sales for the day, the number of units sold, the price collected for each item, and the total amount of money to be deposited in the bank each evening. That it was the duty of an assistant manager to attach a copy of the deposit slip to the report, and to place the money for the day, together with a deposit slip, in a money bag, lock it, and deposit it in the night depository at the Central Bank each evening after closing time. The blank deposit slips are furnished by the Central Bank with the proper account numbers on them, and the manager, or assistant manager, fills them out daily at closing time. A copy of the deposit slip is attached to the daily report which is signed by the manager, or assistant manager, who closes that day. State's exhibits 1 and 2 are reports for October 30, 1981 for $4,322.47, and for November 1, 1981 for $3,296.50. That the appellant was the closing manager on October 30, 1981, and on November 1, 1981, and signed both reports. That the amount missing totaled $7,618.97. That when Mr. Gross heard that there may be a problem at the restaurant, he immediately went to the restaurant on 21st. street where he met with Mr. Davis, the manager, and Mr. Sullivan, the assistant manager, and a gentleman from Central Bank, and found out that the two deposits had not been made, and the deposit slips were not initialed by a bank teller. That Mr. Gross asked the appellant what was going on, and that the appellant was very noncommittal at the time. That Mr. Gross requested Mr. Davis to ask the appellant to come by, and for Mr. Davis and the appellant to be at the restaurant on Tuesday, as Mr. Gross wanted to talk to them on a one to one basis. That the appellant came to the restaurant, and Mr. Gross asked him to return the money, and that the appellant replied, "Mr. Gross, as good as you have been to me, do you think I would steal from you?" That several weeks before this conversation the appellant told Mr. Gross that his key to the bank depository would not work, and Mr. Gross told the appellant to go to the bank the next day and get a new key. That there were three keys to the bank depository. Mr. Davis, Mr. Sullivan, and Mr. Gross each had one. That the money bag had a lock on it, and the next day after a money bag was placed in the bank depository, the person who closed the restaurant the evening before would go to the bank, unlock the money bag, and count the money in the presence of a person who represented the bank, and who would stamp, and initial, the deposit slip. That the deposit slips and daily reports for October 30, and for November 1, 1981 were made out, and signed, by Mr. Sullivan, but the deposits were never placed in the depository at the bank.
State's evidence further tended to prove that Mr. Ray Lee Davis was manager of the restaurant on 21st. street. That in October and November of 1981 he had twenty-four employees at the restaurant. That on October 30, and November 1, 1981, Mr. James Sullivan, the appellant, was assistant manager of the restaurant. That his duties as assistant manager are almost the same as the manager, which are running the restaurant, making daily reports, making bank deposits, hiring, and firing employees. They are a team-type responsibility between the manager and the assistant manager. That November 2, 1981 was Mr. Davis' day off, but at about 9:00 or 9:15 A.M., Mr. Davis went by the restaurant, and found that Mr. Sullivan was not there, so Mr. Davis took the key to the deposit bag, and went to the bank to claim the unprocessed bags which should have been dropped in the bank depository. That when Mr. Davis got to the bank, the deposit for Sunday, November 1, 1981, the day before, was not there. That when Mr. Davis went back to the restaurant at about 10:00 o'clock, A.M., he telephoned Mr. Sullivan, and told him that the Sunday evening money bag was not at the bank, and Mr. Sullivan told Mr. Davis that his key to the bank depository would not work on Sunday night, and that he had the deposit bag with him at his apartment, and that he would drop it by the bank on his way to work. That on Tuesday morning Mr. Davis went back to the bank to process the money bag, and when he got to the bank, he found out *Page 133 
that the money bag had not been left there Monday by Mr. Sullivan. That Mr. Davis again called Mr. Sullivan from the bank, and Mr. Sullivan said he had left the money bag with a drive-in teller by the name of Bridgette, and the bag was supposed to be at the bank. That Mr. Davis then requested Mr. Sullivan to meet him back at the restaurant, and Mr. Sullivan came to the restaurant, and Mr. Davis and Sullivan went to the bank where they met with Mr. Yogi, a supervisor, Bridgette, a drive-in teller, and Mr. Davis told Bridgette that she knew Sullivan left the bag at her drive-in window, and Bridgette began to cry, and said he did not leave the bag with her, and Mr. Davis advised the bank employees that he knew Mr. Sullivan had left the bag at the drive-in teller window, and that they needed the money, and that he was going to call the police. Mr. Sullivan and Mr. Davis returned to the restaurant, and Mr. Davis called Mr. Gross. That Mr. Davis said to Mr. Sullivan that they really did not have a problem because the bank made pictures of all transactions made at the drive-in teller window, and the bank's records would show that Mr. Sullivan did, in fact, deliver the bag to the drive-in teller's window. That Mr. Davis then called the police, and before anyone arrived, Mr. Sullivan told Mr. Davis that he, Sullivan, really did not carry the bag to the drive-in teller window, but that somebody stole it out of his car, and that he was scared, and just made up the story about taking the bag to the drive-in teller window. That Mr. Sullivan made out a police report that someone had stolen the money out of his car. That this happened on Tuesday, November 3, 1981. That on Wednesday, November 4, 1981, Mr. Davis found out that the deposit for Friday night, October 30, 1981, was missing. That Mr. Davis called Mr. Sullivan, and he came to the restaurant, and there was a conference between Mr. Davis, Mr. Sullivan, and Mr. Gross, in which Mr. Gross asked Mr. Sullivan where Friday night's deposit was, and Mr. Sullivan replied that he did not want to answer any more questions. That Mr. Sullivan closed Friday night. That when Mr. Sullivan was arrested, he had two keys to the bank depository, one was an old key, and one was a new key. That Mr. Gross also had a key, and Mr. Davis had a key.
State's evidence further tended to prove that Bridgette Lanell Dabney was an employee at the main office of the Central Bank during the month of October and November, 1981, and was working as a drive-in teller, paying, and receiving. That on a Monday, or Tuesday, the appellant, Mr. Sullivan, came to the drive-in teller window, and gave her $150.00 in cash, and she gave him $150.00 in change, and he left, and then about thirty minutes later Mr. Sullivan and Mr. Davis, the manager of Bonanza, came to the bank, and Mr. Davis said that Mr. Sullivan told him that he had given the night deposit bag to Bridgette, and she told them that Mr. Sullivan had not given the bag to her. That later on the branch manager, and the operations officer, came to the drive-in window, and searched it, and did not find a money bag. That Bridgette was given a polygraph test by the bank, and passed it. That Mr. Davis did most of the talking to her at the bank, and Mr. Sullivan was very calm, and Mr. Davis asked Mr. Sullivan if he had given her the bag, and Mr. Sullivan did not reply loud enough for her to hear him.
State's evidence further tended to prove that Anthony Figguers, an employee at the Bonanza Restaurant was on duty on November 1, 1981. That the Bonanza closed at 9:00 o'clock, P.M. That after they closed, Mr. Sullivan went back and did the paper work. That when Sullivan got through with the paper work, they went by the bank to make the bank deposit, and that the night depository key didn't work, so Mr. Sullivan called Mr. Figguers to come and see if he could get the key to unlock the bank depository. That he tried the key, and it would not work. That he took Figguers and two others who worked at Bonanza to their homes. That Sullivan said he was going back by the Bonanza and put the money bag in the safe there. That on November 2, 1981 he worked the shift from *Page 134 
5:00 A.M. to 9:00 P.M., and left the Bonanza about 10:00 o'clock. That while Mr. Sullivan was back doing the paper work, Mr. Figguers was cleaning up, and letting customers out. That Figguers and Sullivan left to go home about 10:00. That when they left Central Bank, the money bag was on the front seat of Mr. Sullivan's car under the arm rest. Two other employees were riding in the back seat. The Bonanza had three money bags. He rode home with Mr. Sullivan on Sunday and Monday, November 2 and 3.
State's evidence further tended to prove that Sandy Miller, an employee of Stanley F. Lapidus, a certified public accountant's firm, was in full charge of Bonanza's account. That it was her duty to take the bank statement, when it came in from the bank, and the check stubs, and the daily reports of Bonanza, and reconcile the checkbook back to the bank statements. That state's exhibit number 3 is a summary for the month of October prepared from the daily reports made by the manager, and the deposits made at the bank, day by day, and the name of the manager who made the reports, and the date the deposit was made at the bank. The deposit for October 1 was made on October 10 by Mr. Sullivan. That the daily report is made by the person who closes on that day, and has the deposit slips attached to it.
State's evidence further tended to prove that Robert Funderburg was an employee as security director at Central Bank on November 3, 1981. That he became involved in this case when the manager came from Bonanza to pick up the bag. That he only picked up one bag, and there was supposed to be more than one. That he got the record stating that only one bag had been dropped over the weekend, and the only bag that he could find was just one that was dropped on Sunday night. State's exhibit 4, a bank record under dual control, shows, when anyone who makes a deposit at night, the teller, when they go to work a bag, or count the bags that are in the night deposit, they log down the bag numbers, and when a person comes to pick up the bags, they are locked with a number on them. They have to sign with their initials showing that the bag has been picked up. State's exhibit 4 shows that the bag was for 11/2/81, and it was for Monday morning. Bag number 304 was by Mr. Ray Davis at 9:23 Monday morning. Exhibit 4 was introduced into evidence. Then Sergeant Rosen and Mr. Funderburg went to Mr. Sullivan's house, and brought him back to the Bonanza. That then Sergeant Harper with the Birmingham Police was called in, and they talked to Mr. Sullivan, and Mr. Funderburg left. Mr. Funderburg was out of the matter after Sergeant Harper got involved.
State's evidence further tended to prove that Sergeant R.W. Harper of the Birmingham Police Department, on November 3, 1981, was assigned as a detective sergeant in business service. That Mr. Gross requested him to come over to the Bonanza Restaurant and talk with him which Sergeant Harper did. That when he arrived, Mr. Funderburg, Sergeant Robinson with the Sheriff's Department, and Mr. Sullivan were present. That Sergeant Harper showed Mr. Sullivan the daily report slips that he had filled out with the deposit slips, and asked him if he had filled them out, and he said he had. Then Sergeant Harper asked him where the money was, after having read his rights to him, and he said he did not know. The state rested its case, and the appellant made a motion for an acquittal on the grounds that the state had failed to prove the element of deception; that the facts do not sustain a probable cause to believe a crime was committed, and that the facts as presented by the state did not support the allegations of the state made in the indictment.
Rule Number 12.1. (a), (b), and 12.2. (a), (b), (c) of Criminal Procedure, Temporary:
"Rule 12.
"Motion for judgment of acquittal.
"12.1. Nature and form of the motion. *Page 135 
 "(a) NATURE OF THE MOTION. The court on motion of the defendant stating the grounds therefor, or on its own motion, shall direct the entry of a judgment of acquittal as to any charged offense, or as to any lesser included offense, for which the evidence is insufficient to support a finding of guilty beyond a reasonable doubt.
 "(b) FORM OF THE MOTION. Motion for judgment of acquittal may be made either in writing or orally upon the record and shall be argued outside the hearing of the jury; except that motions pursuant to Temporary Rule 12.3 shall be in writing.
 "12.2. Motion for judgment of acquittal before submission of case to factfinder.
 "(a) TIME FOR MAKING MOTION. The defendant may make a motion for judgment of acquittal either at the close of the state's evidence, or at the close of all the evidence.
 "(b) DECISION ON MOTION. If the motion for judgment of acquittal is made after the close of the state's evidence, the court shall rule on the motion before calling on the defendant to present his evidence. If the motion is made at the close of all the evidence in a jury case, the court shall rule on it before permitting argument or charging the jury; if it is not ruled on at that time, it is deemed denied. In a nonjury case, if the motion is not ruled on prior to the submission of the case for decision, the motion is deemed denied.
 "(c) EFFECT OF MOTION. A defendant who moves for judgment of acquittal at the close of the state's evidence may offer evidence in the event that the motion is not granted, without having reserved the right to do so, and to the same extent as if no such motion had been made. The making of a motion for judgment of acquittal is not a waiver of trial by jury. An order granting a motion for judgment of acquittal is effective without the assent of the jury."
When a motion for a judgment of acquittal before submission of cause to a jury is made on the grounds that the state has failed to make out a prima facie case because the evidence is insufficient to support a finding of guilty beyond a reasonable doubt, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In determining if the evidence of the state is sufficient to sustain a verdict, the trial court should consider only the evidence before the jury of the facts at the time the motion was made, and must consider it most favorably to the state. When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit the case for the jury to determine the weight it will give the evidence. This Court should not disturb the jury's decision.
A person commits the crime of theft of property if he:
(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property; or
(2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his property. Code of Alabama, 1975, Title 13A-8-2. The theft of property which exceeds $1,000.00 in value constitutes theft of property in the first degree, a Class B felony. Code of Alabama, 1975, Title 13A-8-3.
We hold that under state's evidence, and all reasonable inferences therefrom, the evidence in this case is sufficient to sustain a jury verdict of guilty of theft in the first degree as charged in the indictment, and that the trial court did not err to the prejudice of the appellant in overruling his motion for judgment of acquittal. Hinds v. State, Ala.Cr.App.,423 So.2d 1382; Dolvin v. State, Ala., 391 So.2d 133; Barbee v.State, Ala.Cr.App., 395 So.2d 1128; Crumpton v. State, Ala.Cr.App., 402 So.2d 1081; Johnson v. State, Ala.Cr.App.,
 *Page 136 
378 So.2d 1164, certiorari quashed, Ala., 378 So.2d 1173; Kelly v. State, Ala.Cr.App., 423 So.2d 343; Bozeman v. State, Ala.Cr.App.,401 So.2d 167, certiorari denied, Ala., 401 So.2d 171, certioraridenied, 454 U.S. 1058, 102 S.Ct. 606, 70 L.Ed.2d 595.
The judgment of the trial court is due to be, and is hereby affirmed.
The foregoing opinion was prepared by Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court; his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur.
[EDITORS' NOTE: PAGES 137-140 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 565