Appellant was convicted in the Mobile Circuit Court of murder and sentenced to life imprisonment. She appeals to this court.
The appellant gives three reasons why her conviction should be reversed. First, that the trial court committed reversible error by admitting into evidence her confession when the evidence showed that the confession was based on fear. Second, by admitting into evidence the confession when the evidence showed that the accused was confused and distraught. Third, in denying appellant's motion to exclude the evidence in that the State did not prove a prima facie case against the appellant.
The appellant filed a motion to have her confession suppressed. After a hearing on the motion, the trial court entered an order denying appellant's motion.
State's evidence on the motion to suppress tended to prove that Nicki Patterson, on November 18, 1981, was employed by the Mobile County District Attorney's office as an assistant district attorney. She had been assigned a case involving a Reuben Campbell, who was charged with the murder of Sherman Koger, a baby child of the appellant. On November 18, 1981, a preliminary hearing was held, after which Reuben Campbell was bound over to await action of the grand jury. Immediately after the preliminary hearing, Patterson went back to her office and was there confronted by the appellant, Geraldine Koger, and Reuben Campbell's attorney, Bob Sterling. Sergeant J.D. Fail of the Prichard Police also arrived about that time. The defendant told Patterson that she wanted to talk with her, and that she wished that Patterson had asked her more questions on the stand because she would have told Patterson what had happened. Mr. Sterling told Patterson that he did not know what was going on, but that Ms. Koger had come up to him after the hearing and said she wanted to talk to Patterson and Patterson assumed Ms. Koger was ready to tell the district attorney's office something about Reuben Campbell.
State's evidence further tended to prove that Patterson took the appellant back to her office and, at this point, the appellant told Patterson that the appellant had killed the baby. Patterson stopped her and got someone that could take shorthand. Patterson then explained to the appellant that the appellant had the right to remain silent, not to make any statement, not to incriminate herself in any way, that anything she said could be used against her, that she could have an attorney of her choice present, and if she was unable to hire an attorney, the State would furnish one without cost to her. Patterson also informed appellant that she had a right to have an attorney present during the time she was being questioned, that she could stop the questioning at any time, that Bob Sterling was not her attorney, that no one present then had a right to promise or threaten her in any way, and asked if she understood these rights. Appellant stated that she understood all of her rights, and that she came there of her own free will, nobody forced her. She then indicated that she did *Page 1345 
not want a lawyer. Patterson further testified that the appellant did not appear to be under the influence of alcohol, or any other narcotic substance, that the appellant responded to the questions asked and that sometimes during the taking of the statements the appellant would cry. Patterson asked the appellant if she wished to make a statement, and she said she did. At no point did the appellant indicate that she wanted an attorney or desired to stop giving her statement. Patterson asked the appellant if anyone had promised her anything, threatened her, or done anything in any way to induce her to make a statement. Appellant stated she had not been promised anything, no threats had been made to her, and the statements were freely and voluntarily made. On cross-examination, Patterson's testimony tended to prove that the appellant was coherent, she did not contradict herself at any time during the giving of the statement, and that she was making the statement freely and voluntarily.
The evidence further tended to prove by Bob Sterling's testimony, in substance, that he represented Reuben Campbell at a preliminary hearing on November 18, 1981. At the conclusion of the hearing, the appellant came up to him in the hall and stated that it looked like Reuben Campbell was going to jail unless somebody else confessed and asked if that was right. Mr. Sterling said to her that was the way it looked. Sterling further testified that about two weeks before the 18th, he told the appellant that if Reuben Campbell was not convicted, then the police would be looking for someone else, and that the three most likely subjects would be either her, her mother, or her sister. Appellant asked him if he meant that her mother could be arrested or go to jail, and he told her that he guessed anybody could. He never discussed the matter with the appellant again.
Geraldine Koger testified, in substance, as follows: That Sherman Koger, the deceased, was her son and his father was Reuben Campbell; that after the preliminary hearing, Mr. Sterling told her twelve people would never find Reuben Campbell guilty, and that someone else would be arrested; that that person would be the last person with the baby. She testified that Sterling told her her mother would be the one arrested, and the only way to stop her mother from going to jail was for someone to come forward and confess. He then took her to the district attorney's office. She testified that the statement was absolutely false, but that it was voluntarily made to keep her mother out of jail. She stated that Mr. Sterling was lying at the hearing when he stated that he did not tell her anything about her mother going to jail. She stated that everything Patterson had testified to about the confession was true, but the confession was not.
On cross-examination, appellant testified that Patterson did not offer her any reward, nor tell her she had to make a statement, threaten her in any way, or tell her something bad would happen to her; that the statement was voluntary, and that she was not offered any reward. In the statement, the appellant admitted that she had thrown the baby across the room, and its head had struck a board nailed across the window over a couch. She also testified that the people present at the solicitor's office were Nicki Patterson, assistant district attorney, Bob Sterling, who now represents Reuben Campbell, Fail of the Prichard Police, and Lee Ann Anderson, stenographer from the district attorney's office, and that none of them had made any promises or threats in any way to her.
We will consider together appellant's contentions: (1) that the court erred to her prejudice by admitting into evidence the confession of the appellant when the evidence showed that the confession was based on fear, and (2) that the evidence shows that the accused was confused and distraught. It is well settled by the law of this State that before a confession may be admitted into evidence, the State must make a showing that the confession was voluntary. Additionally, all confessions are presumed to be involuntary. It is the duty of the trial court to determine if the confession was voluntarily given based on *Page 1346 
all of the facts surrounding the giving of the confession. When there is a conflict in the evidence surrounding the taking of the confession, and there is sufficient evidence to support the trial court's finding, this court will not disturb the finding of the trial court on appeal, unless it appears contrary to the great weight of the evidence, or is manifestly wrong, or unjust. The trial judge need only be convinced from a preponderance of the evidence that the confession was knowingly and voluntarily made.
We hold that under the facts in this case, the trial court did not err to the prejudice of the appellant when it allowed into evidence the appellant's confession. Jones v. State, 292 Ala. 126, 290 So.2d 165 (1974); Smith v. State, 291 Ala. 507,282 So.2d 907 (1973); Ball v. State, 409 So.2d 868 (Ala.Cr.App. 1979), writ quashed, 409 So.2d 876 (Ala. 1980); Sullivan v.State, 351 So.2d 659 (Ala.Cr.App.), cert. denied, 351 So.2d 665
(Ala. 1977); Thomas v. State, 393 So.2d 504 (Ala.Cr.App. 1981);Holt v. State, 372 So.2d 370 (Ala. 1978); Rogers v. Richmond,365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1960).
Appellant's third contention is that the trial court erred in denying appellant's motion to exclude the evidence. The indictment charges that the appellant did, with intent, cause the death of Sherman Koger by causing multiple injuries to the head of Sherman Koger in violation of § 13A-6-2, Code of Alabama 1975, which provides:
"(a) A person commits the crime of murder if:
 "(1) With intent to cause the death of another person, he causes the death of that person or of another person; or
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
State's witness Leroy Riddick, M.D., coroner of Mobile County, testified, in substance, as follows: He performed an autopsy on the victim in this case in October 1981; that in his opinion the child died from a blunt force to the head; that the infant weighed sixteen pounds and was normally developed, generally healthy, and had massive head injuries. He stated there was about a ten-inch long fracture that started on the right side of the skull and went all the way around to the left side of the skull, and that the brain was swollen so much that the fracture was separated by a little more than a quarter of an inch. In the back of the head, on the left side, there were four more fractures at the base of the brain. The brain was massively swollen, and when that happens, it compresses the vital centers that concern the heart rate of beating and breathing. There were five fractures of the skull that could have been caused by banging the child's head on a flat object, and that the banging of the head would have to have been very, very forceful.
Joseph Crenshaw, a police officer, testified, in substance, that he went to the home of the appellant, saw a bar in the room and, across the room a sofa under a window across which a board had been nailed.
The statement made by the appellant was admitted into evidence before the jury. In the statement, the appellant stated that she killed the deceased by throwing him across the room and hitting his head on a board nailed across the window above the couch.
When the State rested its case, the appellant made a motion to exclude State's evidence because the State had failed to make a prima facie case against the appellant.
When a motion to exclude State's evidence is made on the grounds that the State has failed to make a prima facie case, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In its determination, the trial court should consider only the evidence before the jury at the time the motion is made and must consider it most favorably to the State. When there is legal evidence from which the jury could, *Page 1347 
by fair inference, find the defendant guilty, the trial court should submit it to the jury. This court will not disturb the trial court's decision.
The evidence in this case is sufficient for the jury to find that the deceased was killed by a banging of his head on a flat object in a very, very forceful way, so as to fracture the skull in five places. The appellant, in her statement, stated that she did it by throwing the baby across the room and hitting its head on a board nailed across the window over a couch.
We hold that the trial court did not err in denying appellant's motion to exclude the evidence. Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), writ quashed, 378 So.2d 1173 (Ala. 1979); Kelly v.State, 423 So.2d 343 (Ala.Cr.App. 1982); Hinds v. State,423 So.2d 1382 (Ala.Cr.App. 1982); Bozeman v. State, 401 So.2d 167
(Ala.Cr.App.), writ denied, 401 So.2d 171 (Ala. 1981), cert.denied, 454 U.S. 1058, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981).
The judgment of the trial court is due to be, and is hereby, affirmed.
The foregoing opinion was prepared by Retired Circuit Judge JOSEPH J. MULLINS, serving as a judge of this court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the court.
AFFIRMED.
BOWEN, P.J., and TYSON, HARRIS and SAM W. TAYLOR, JJ., concur.