The appellant was convicted of two counts of enticing a child for immoral purposes, in violation of § 13A-6-69, Code ofAlabama (1975), and for sodomy in the second degree, in violation of § 13A-6-64, Code of Alabama (1975). He was sentenced to five years' imprisonment on each enticement charge and to ten years' imprisonment on the sodomy charge, and was fined $5,000.
Sometime in February or March 1982, the victim, V. O., first met the appellant at Raymond Dozier's house after being taken there by a friend, Derrick Gayle. When V. O. and Gayle arrived at Dozier's house, Dozier and the appellant were drinking and "getting high." The appellant offered V. O. a drink, but made no sexual advances toward him. The following day, V. O. and Gayle went back to Dozier's house where they found the appellant, Raymond Dozier, E.J. Gayle, and Willie Dubose, all drinking vodka and smoking marijuana. The appellant and Dozier were the only adults at the house. The victim, who had never smoked or drunk alcoholic beverages, had three drinks and smoked two marijuana joints. The appellant approached V. O. and asked him if he wanted to have sex. He then followed the appellant to the back bedroom, where they had anal and oral sex. Before V. O. left Dozier's house, the appellant asked him if he could pick him up the next day after school. V. O. agreed. The following day they went to the appellant's house, where they drank wine and smoked marijuana joints. Shortly thereafter, they had anal and oral sex. The appellant gave V. O. $20 before they left the house. On another occasion, in February or March of 1982, V. O. went to Dozier's house and found young men dancing and stripping in front of the appellant and Dozier. While the others were dancing, the appellant was fondling them. Later, the appellant and V. O. had oral sex.
Derrick Gayle testified that when he first took V. O. to Raymond Dozier's house, he told him that Dozier was a homosexual. He testified that, as far as he knew, V. O. had never smoked marijuana before going to Dozier's house. He further testified that he had, on at least one occasion, observed the appellant and V. O. engaging in sexual acts. *Page 1184 
Robert Hall, who was convicted for the manslaughter of Raymond Dozier, testified that he had performed homosexual acts with Dozier for money and drugs. Hall testified that in March of 1982, while at Dozier's house, he had observed the appellant and V. O. engaging in sexual acts.
Michael Stokes also testified that sometime in February of 1982, he went to Dozier's house to be tutored. He testified that one day, while at Dozier's house, he saw the appellant and V. O. come into the house and go into the back room. Stokes further testified that he saw the appellant and V. O. engaging in sex. V. O. was 15 years old at the time the sexual acts took place.
 I
The appellant contends that the trial court erred when it denied his motion to exclude the evidence, his motion to set aside the verdict, and his motion for a new trial. Specifically, he contends that the State failed to prove that the offenses charged were within the statute of limitations.
The applicable statute of limitations for this is found in § 15-3-5, Code of Alabama 1975. Section 15-3-5 provides as follows:
 "(a) There is no limitation of time within which a prosecution must be commenced for:
"(1) Any capital offense;
 "(2) Any felony involving the use, attempted use, or threat of, violence to a person;
 "(3) Any felony involving serious physical injury or death to a person;
 "(4) Any sex offense involving a victim under 16 years of age, regardless of whether it involves force or serious physical injury or death;
"(5) Any felony involving arson of any type;
"(6) Any felony involving forgery of any type;
"(7) Any felony involving counterfeiting; and
"(8) Any felony involving drug trafficking.
"(b) The amendments made by this act shall apply:
 "(1) To all crimes committed after January 7, 1985; and
 "(2) To all crimes committed before January 7, 1985, for which no statute of limitations provided under pre-existing law has run as of January 7, 1985.
 "(c) Nothing herein shall be construed to mean that the adoption of this act indicates that any former statute of limitations applying to capital offenses is invalid as the result of any decision of any court invalidating the capital punishment statutes of the state of Alabama. (Code 1852, § 401; Code 1867, § 3949; Code 1876, § 4640; Code 1886, § 3707; Code 1896, § 5067, Code 1907, § 7344; Code 1923, § 4928; Code 1940, T. 15, § 219; Acts 1984, 2nd Ex.Sess., No. 85-14-14, p. 16, §§ 1, 2, 4)." (Emphasis added.)
It is clear that, pursuant to § 15-3-5, Code of Alabama (1975), the offense charged in this case no longer has a statute of limitations. Under pre-existing law, the three year statute of limitations of § 15-3-1, Code of Alabama (1975), applied to the charge in this case. However, § 15-3-5(b)(2) provides as follows:
 "The amendments made by this act shall apply: (2) To all crimes committed before January 7, 1985, for which no statute of limitations provided under pre-existing law has run as of January 7, 1985."
Therefore, under § 15-3-5(b)(2), the sexual acts in this case had to have occurred after January 7, 1982.
This Court considered the same argument in the recent case ofHawkins v. State, 549 So.2d 552 (Ala.Cr.App. 1989). In Hawkins, the sexual abuse occurred on January 17 and 27 of 1982. The complaint of abuse did not occur until January, 1987. This Court noted in Hawkins, that the applicable statute of limitations, at the time of the incidents, was found in §15-3-1, Code of Alabama (1975). In Hawkins, this court stated as follows:
 "Under § 15-3-5(a)(4), added by the January 1985 amendment, there is no limitation of time within which a prosecution *Page 1185 
must be commenced for any sex offense involving a victim under the age of 16. Furthermore, § 15-3-5(b)(2), Code of Alabama 1975, provides in effect that the 'no limitation' provisions of § 15-3-5 applies to all such crimes committed before January 7, 1985, for which any statute of limitations provided under pre-existing law had not run as of January 7, 1985.
 "In the case at bar, the offenses took place on January 17 and 27 of 1982. The three-year statute of limitations, as provided in § 15-3-1, would not have run until January 17 and January 27 of 1985. However, the effect of § 15-3-1 was changed on January 7, 1985, by the amendment to § 15-3-5. Therefore, since § 15-3-5(b)(2), was in effect before the limitations period provided in § 15-3-1
had expired, the 'no limitation of time' provision of amended § 15-3-5 controls and the prosecution was not barred by a statute of limitations."
549 So.2d at 554.
The victim, V.O., testified that the sexual acts occurred in February or March of 1982. He specifically remembered these months because it was during basketball season. The other State's witnesses also testified that the sexual acts occurred in February or March of 1982.
The appellant contends that it is without dispute that the victim was 14 years old when he went to the appellant's house. He argues that the sex acts occurred prior to June 15, 1981. (The victim was born on June 16, 1966.) Admittedly, there was conflicting evidence as to the victim's age; however, this conflict was a question for the jury to resolve. Anonymous v.State, 502 So.2d 1211 (Ala.Cr.App. 1986). It is well settled that "any inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury to consider." Mosley v. State, 461 So.2d 34, 36
(Ala.Cr.App. 1984). "This court will not interfere when the evidence is conflicting if there was material evidence tending to support the jury's verdict." Washington v. State,539 So.2d 1089, 1100 (Ala.Cr.App. 1988).
 II
The appellant argues that the State presented insufficient evidence to sustain his conviction of enticing, alluring, or persuading the victim to enter the house of Raymond Dozier.
Section 13A-6-69 provides as follows:
 "It shall be unlawful for any person with lascivious intent to entice, allure, persuade or invite, or attempt to entice, allure, persuade or invite, any child under 15 years of age to enter any vehicle, room, house, office or other place for the purpose of proposing to such child the performance of an act which constitutes the offense of sodomy or for the purpose of proposing the fondling or feeling of the sexual or genital parts of such child or the breast of such child, or for the purpose of committing an aggravated assault on such child, or for the purpose of proposing that such child fondle or feel the sexual or genital parts of such person.
 "Any person violating the provisions of this section shall, for the first violation, be punished by a fine not to exceed $5,000.00 or by confinement for a term not to exceed five years, or by both fine and imprisonment; and any person who shall be convicted for the second violation of this section shall be punished by confinement in the penitentiary for not less than two nor more than 10 years, and such person shall not be eligible for probation. (Acts 1967, No. 388, p. 976; Code 1975, § 13-1-114.)"
In Ex parte Tedder, 547 So.2d 601 (Ala. 1989), the Alabama Supreme Court considered a claim similar to the one now alleged by the appellant. In Tedder, the court considered whether the defendant invited children into his trailer for the purpose of seeking sexual favors. The Supreme Court stated as follows:
 "The evidence introduced at trial tended to show that Tedder, while wearing only a 'g-string,' invited the children into his trailer, where he showed them sexually explicit pictures of himself and his wife. Some of the pictures shown to the *Page 1186 
children were of the act of fellatio. From this evidence, the jury could have found beyond a reasonable doubt that Tedder invited the children into his trailer for the purpose of making a sexual proposal to them. In fact, as recognized by Presiding Judge Bowen and Judge McMillan in their dissenting opinion, although § 13A-6-69 does not require that a proposal actually be made, the jury could have found that Tedder's actions constituted the beginning of the proposal itself. The statute does not require that the proposal be communicated by verbal expression or that the proposal be manifested in any particular form or fashion." (Emphasis added.)
547 So.2d at 602.
In the instant case, there was no evidence of verbal communication by the appellant to the victim asking him to come to Dozier's house; however, there was an enticement of drugs and alcohol. Furthermore, a reading of the statute indicates that Dozier violated § 13A-6-69, Code of Alabama (1975), when he invited the victim into the back bedroom of Dozier's house for the purpose of performing sexual acts.
This Court, in determining whether the State proved its prima facie case, is required to view the evidence in a light most favorable to the State and cannot substitute its judgment for that of the jury. Cole v. State, 443 So.2d 1386 (Ala.Cr.App. 1983). A jury verdict should not be overturned unless "allowing all reasonable presumption for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." Sales v. State, 435 So.2d 242, 246 (Ala.Cr.App. 1983).
Because there was sufficient evidence to present to the jury, the refusal of the trial judge to grant the appellant's motion was not error. See Austin v. State, 555 So.2d 324 (Ala.Cr.App. 1989).
 III
The appellant argues that the jury selection process used by the State violates the United States Supreme Court decision ofBatson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986). The appellant argues that the prosecution systematically excluded black persons from the jury on the basis of race when it used all of its strikes to strike black jurors.
In Batson v. Kentucky, 476 U.S. 79, 86, 106 S.Ct. 1712, 1717,90 L.Ed.2d 69 (1986), the United States Supreme Court held that purposeful racial discrimination in the selection of the jury venire violates a defendant's right to equal protection because it denies the defendant the protection that a trial by jury is intended to secure. The Supreme Court then stated the following:
 "[A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
476 U.S. at 96, 106 S.Ct. at 1723. The Court also stated the following:
 "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize that the prosecutor's explanation *Page 1187 
need not rise to the level justifying exercise of a challenge for cause."
476 U.S. at 97, 106 S.Ct. at 1723.
The State gave the following reasons for its seven strikes:
 "MR. GREENE: Your Honor, on juror number one — excuse me, juror number 43, the State's first strike, that individual was struck because he indicated that he was very familiar with and an associate of the defense attorney. Juror —
 "MR. CHESTNUT: Your Honor, could we stop and take them individually?
 "THE COURT: Let's let him have his say and then you reply. I think that would be better and we could move smoother.
"MR. CHESTNUT: All right, sir.
 "MR. GREENE: Juror number 52 was reputed to have operated a rather well known nightclub on the county line and law enforcement officers had dealt with this lady on many occasions and recommended her as not being truthful or a proper person to serve on a jury, having had occasion to be familiar with her in the past and had to work cases with her. Very familiar with her operation. And she was recommended for a strike.
 "THE COURT: Just so I understand, are you saying that she has a reputation for dishonesty?
 "MR. GREENE: A reputation of running a nightclub, Your Honor, that was most rough and has also a reputation for being involved in matters where she was not truthful; and that was reported to me —
"THE COURT: You consider that dishonest?
 "MR. GREENE: All right, sir. 'Dishonest' as opposed to the use of the word 'not truthful.' Not stealing, Judge, but not being truthful.
"THE COURT: It ain't honest to lie, is it?
 "MR. GREENE: Well, okay; semantics of it. Juror number 77 was struck as being someone who is knowledgeable of and friends of the defense attorney. Juror number 78, the State's fourth strike, was the defense attorney's partner. He indicated he did not feel he could serve on this case due to his involvement both with the case and the individual. The fifth strike was juror number 54, who indicated he knew Mr. Dozier who would be a person of some importance in this matter where the indictment charged that some of the events involved herein occurred at his house. He also indicated he knew one of the witnesses and appeared to have a great deal of knowledge of the case. We felt he would not be a proper person to so serve. Juror number 44, likewise, indicated he knew Mr. Dozier. I've just set out the reasons why the knowledge of Mr. Dozier would be important. And also is somebody I know personally. He's been a witness involved in several cases and runs a nightclub; and has had some personal problems with his own past involving various and sundry criminal matters. And I simply feel he would not be a good State's juror. I do know him personally. Juror number 60 was struck. She indicated she was single, unemployed; and was the only person on this jury panel I found in that particular circumstance. I feel like each of these jurors were struck for a very compelling and proper reason, having nothing to do with their — with the fact that they were black or not black."
The trial court found that all but one of the potential jurors were struck for sufficient cause. The trial court placed juror number 60 back on the jury and allowed the State one more strike, which was not challenged by the appellant.
In Harrell v. State, 555 So.2d 263, 268 (Ala. 1989), our Supreme Court held: "Where the prosecution fails to offer a reasonable explanation for its strikes, jury selection must begin anew." The trial court correctly followed this language when it reinstated juror number 60 and started the jury selection procedure anew, as to that juror.
 IV
The appellant argues that he was denied effective assistance of counsel. He *Page 1188 
asserts that his trial counsel was ineffective because he failed to request jury instructions regarding the statute of limitations.
The appellant did not present this issue to the trial court and therefore cannot raise it on direct appeal. In Heath v.State, 485 So.2d 1226, 1235 (Ala.Cr.App. 1986), this Court stated the following:
 "We now remind appellant that this Court is an appellate court and that it is not a part of its right, duty, or function to determine the issue as to whether he has received effective assistance of counsel unless and until that issue has been presented to the appropriate trial court for its determination and this Court is called upon to review the trial court's determination of the issue."
For the foregoing reasons, this case is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.