642 So.2d 528 (1994)
Dorothy Louise JOHNSON
v.
STATE.
CR-92-1585.
Court of Criminal Appeals of Alabama.
March 25, 1994.
Charles E. Floyd III, Phenix City, for appellant.
James H. Evans, Atty. Gen., and Gilda Williams, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
The appellant, Dorothy Louise Johnson, was convicted of theft of property in the first degree, a violation of § 13A-8-3, Code of Alabama 1975. She was sentenced to four years' imprisonment and was ordered to pay $9,000 in restitution. Her sentence was suspended and she was placed on supervised probation for five years.
The state's evidence tended to show that the appellant took $9,000 from her sister-in-law, Mattie Speaks. Ms. Speaks was living with her brother, Page Johnson, and his wife, the appellant, on November 2, 1989, when the appellant helped Ms. Speaks open an account and secure a certificate of deposit at SouthTrust Bank in Phenix City, Alabama. Ms. Speaks was depositing the proceeds of a check on a bank in Augusta, Georgia. Ms. Speaks put approximately $20,000 into a certificate of deposit and established a savings account into which she deposited $10,000. The savings account was established as a *529 joint account and either Ms. Speaks or the appellant could access the money.
On November 14, 1989, 12 days after the savings account was opened, the appellant withdrew the $10,000.[1] On the same day, Page Johnson, the appellant's husband, complained to the Department of Human Resources that the appellant had taken money from Ms. Speaks's account and was not using it for Ms. Speaks's benefit.
Mr. Q.P. Motley, the social worker who investigated Mr. Johnson's complaint, visited the house where the Johnsons and Ms. Speaks lived. Mr. Motley testified that he noticed that Ms. Speaks had bruises on her arms and that her lip was swollen and cut. Mr. Motley testified that Ms. Speaks told him that the appellant had hit her because she had said she wanted to go to a hospital. He also testified that Ms. Speaks told him that the appellant "was not handling her money correctly and that she was taking some of her money."
Two days after the original complaint was filed, Mr. Motley received a second complaint from a hospital where Ms. Speaks had been admitted for acute anxiety, confusion, and possible physical abuse. Mr. Motley went to the hospital and talked with Ms. Speaks. After this meeting, Mr. Motley initiated action to protect Ms. Speaks's remaining funds.
Ms. Speaks, who was 73 years old at the time of trial, testified that the appellant had not stolen money from her and that she had given the appellant $9,000 because she loved her. Some of Ms. Speaks's testimony was inconsistent and she appeared to be confused about some facts. She also stated that the appellant had given her a ring the day before the trial.
On appeal, the appellant presents two issues, both of which pertain to the sufficiency of the evidence. When reviewing a question involving the sufficiency of the evidence, we must consider the evidence in the light most favorable to the state. Marks v. State, 581 So.2d 1182 (Ala.Cr.App.1992).
Section 13A-8-3, Code of Alabama 1975, defines theft of property in the first degree as "theft of property which exceeds $1,000.00." Section 13A-8-2, Code of Alabama 1975, provides, in pertinent part:
"A person commits the crime of theft of property if he:
"(1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his property...."
Specifically, the appellant contends that the state failed to present evidence sufficient to prove that the appellant knowingly obtained or exerted unauthorized control over Ms. Speaks's money and that the state failed to prove that the appellant did not believe that she had a claim to the money.
Ordinarily, "a joint owner of property cannot be convicted of the theft of that property." Gainer v. State, 553 So.2d 673, 681 (Ala.Cr.App.1989). However, in Gainer, we held that "where the evidence supports an inference that the defendant wrongfully obtained control over a bank account, the question of whether the defendant is actually a joint owner of the account is a question for the jury." 553 So.2d at 682. (Emphasis in original.)
"`When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit the case for the jury to determine the weight it will give the evidence.' Sullivan v. State, 441 So.2d 130, 135 (Ala.Cr. App.1983)."
Ayers v. State, 594 So.2d 719, 720 (Ala.Cr. App.1991).
The only evidence that the state presented at trial to show that the appellant had exerted unauthorized control over Ms. Speaks's money was the hearsay testimony of Mr. Motley. The appellant did not object to Mr. Motley's testimony as to what Ms. Speaks had told him when he investigated her case. If there had been objections to that portion of his testimony concerning the statements that Ms. Speaks made to him *530 based on hearsay grounds, they would be due to be sustained. The record reflects that no such objections were made.
"Ordinarily, a witness's testimony becomes legal evidence if it is received without objection. Wilson v. State, 52 Ala.App. 680, 296 So.2d 774, cert. denied, 292 Ala. 759, 296 So.2d 778, cert. denied, 419 U.S. 845, 95 S.Ct. 79, 42 L.Ed.2d 73 (1974). Hearsay evidence which is admitted without objection becomes lawful evidence. Wilder v. State, 52 Ala.App. 157, 290 So.2d 225 (1974). `The fact that evidence which is introduced in a case may be, if objected to, incompetent evidence under some one or more exclusionary rules of evidence does not destroy its probative effect, if it is admitted without objection.' Smith v. State, 40 Ala.App. 600, 119 So.2d 202, cert. denied, 270 Ala. 741, 119 So.2d 203 (1960)."
Watson v. State, 398 So.2d 320, 325 (Ala.Cr. App.), writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed.2d 955 (1981).
Based on the evidence presented through Mr. Motley's testimony, there was sufficient evidence from which the jury could conclude beyond a reasonable doubt that appellant exerted unauthorized control over Ms. Speaks's money. Likewise, the appellant's intent is a jury question and there was sufficient evidence, based on Mr. Motley's testimony, from which the jury could conclude, beyond a reasonable doubt, that the appellant intended to deprive Ms. Speaks of her money.
Based on the foregoing reasons, the appellant's conviction is affirmed.
AFFIRMED.
ALL the Judges concur, except BOWEN, P.J., who dissents with opinion.
BOWEN, Presiding Judge, dissenting.
The majority states that "[t]he only evidence that the State presented at trial to show that the appellant had exerted unauthorized control over Ms. Speaks's money was the hearsay testimony of Mr. Motley." (Emphasis added.) That statement presumably refers to Mr. Motley's testimony that Ms. Speaks told him that the appellant "was not handling [Ms. Speaks's] money correctly and that [the appellant] was taking some of [Ms. Speaks's] money."
I dissent. The issue is not what the appellant did with the money in the joint account after the joint account was established (for the appellant was then ostensibly a joint owner of the account), but whether the appellant wrongfully obtained her status as a joint owner of the account in the first place. See Gainer v. State, 553 So.2d 673, 682 (Ala.Cr. App.1989).
By signing a signature/account agreement with the bank, each signatory to a joint bank account gives his apparent consent to the other signatory's control over the funds in the account. Gainer, 553 So.2d at 679. Therefore, as the majority recognizes, the general rule is that "a joint owner of property cannot be convicted of the theft of that property." (Quoting Gainer, 553 So.2d at 681.) Although the majority gives lip service to the general rule, it refers to the funds in the joint account as "Ms. Speaks's money." Because the appellant was a joint owner of the funds, it is incorrect to refer to those funds, once the account was established, as "Ms. Speaks's money."
The funds were Ms. Speaks's and the appellant was guilty of theft only if the appellant wrongfully obtained her status as a co-signatory on the joint account. Gainer, 553 So.2d at 682 ("[a]ccordingly, we hold that in a criminal prosecution for theft, where the evidence supports an inference that the defendant wrongfully obtained control over a bank account, the question of whether the defendant is actually a joint owner of the account is a question for the jury") (emphasis in original).
In Gainer, the State proved that at the time the joint bank account was established, the victim was mentally incompetent, the defendant knew of the victim's incompetence, and the defendant used that knowledge to gain control over the victim's finances. This Court held that "mental deficiency on the part of the victim, which is known or should be known to the defendant, can render ineffective the apparent consent by that victim in *531 a prosecution for theft." Gainer, 553 So.2d at 679.
In contrast to the Gainer prosecution, the State in this case presented no evidence that Ms. Speaks was mentally incompetent when the joint account was established, that the appellant was aware of any mental deficiency on Ms. Speaks's part, or that the appellant used that awareness to convince Ms. Speaks to set up a joint bank account with her.
In Gainer, the victim was deceased at the time of trial. The State relied on circumstantial evidence to prove that the accused had ingratiated herself with the victim, had preyed on the victim to agree to set up a joint bank account, and then had taken advantage of the situation by purchasing luxury items for herself.
Here, the appellant is Ms. Speaks's sister-in-law, with whom Ms. Speaks came to live. Ms. Speaks testified at trial that she "g[a]ve [$9,000 in the joint account] to [the appellant. The appellant] didn't ask for it." R. 31. Ms. Speaks testified that the appellant had "been so good to [her]" R. 30, had "fixed [her] meals" and had "helped [her] clean up and everything." R. 30. The appellant used $9,000 from the joint account to replace carpets, furniture, and clothing that Ms. Speaks had "messed up." R. 94.
Although the State presented hearsay testimony that Ms. Speaks did not approve of the appellant's use of the money in the joint account, the State presented no evidence that the appellant gained access to that account in the first place by means of any deficiency in Ms. Speaks's mental acumen. Compare United States v. Hill, 835 F.2d 759, 762 (10th Cir.1987) (wherein the court, reversing a theft conviction, observed that "[t]he only evidence of criminality is the circumstantial evidence devolving from the conduct of Mr. Hill after he acquired possession of the property") (emphasis in original).
In this case, unlike Gainer, the State did not prove that Ms. Speaks was mentally deficient, that the appellant knew of that deficiency, and that the appellant used that knowledge to gain control over Ms. Speaks's finances.
In my judgment, the appellant's conviction is due to be reversed and a judgment of acquittal rendered in her favor.
NOTES
[1] There was some evidence that the appellant used $1,000 of the $10,000 for the benefit of Ms. Speaks.